(No. 107129.—

JOHN GREEN, Appellee, v. STEVEN ROGERS, Appellant.

*Opinion filed September 24, 2009.*

Wilson, Elser, Moskowitz, Edelman & Dicker LLP, of Chicago (Daniel E. Tranen and Melissa A. Murphy-Petros, of counsel), for appellant.

Anthony J. Carballo and Garry L. Wills, of Freeborn & Peters LLP, of Chicago, for appellee.

JUSTICE THOMAS delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Kilbride, Garman, Karmeier, and Burke concurred in the judgment and opinion.

## OPINION

Plaintiff, John Green, sued defendant, Steven Rogers, for two counts of defamation *per se* and one count of civil conspiracy. The circuit court of Du Page County dismissed plaintiff's first amended complaint pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 2006)), and plaintiff appealed. The appellate court affirmed the dismissal of the civil conspiracy count but reversed the dismissal of the defamation *per se* counts. 384 Ill. App. 3d 946. Defendant then appealed to this court, arguing that the appellate court also should have affirmed the dismissal of plaintiff's defamation *per se* counts. We granted defendant's petition for leave to appeal (210 Ill. 2d R. 315(a)).

### BACKGROUND

Plaintiff, a practicing dentist and licensed attorney, lives in Clarendon Hills. From 2000 to 2004, plaintiff and his son were actively involved in the Clarendon Hills Little League (CHLL) program. During this period, plaintiff served at various times as a team manager, as a coach, and as director of the CHLL minor league.

In November 2004, defendant was elected president of CHLL. The following month, plaintiff submitted his name for a coaching position in the CHLL major league. On March 4, 2005, defendant sent plaintiff an e-mail stating that the CHLL board had decided not to assign plaintiff a coaching position in the CHLL major league for the 2005 season. According to defendant's e-mail, "[t]his decision was based on a long pattern of behavior which is not consistent with what we feel is acceptable for our coaches." Defendant added that the decision "was not made in haste" and that the CHLL board "had spent several hours in several meetings discussing the pros ands cons of the decision." Defendant then noted that,

although plaintiff would not be assigned an official coaching position on his son's team, he would be free to assist his son's team as a volunteer during practices and before games. Finally, defendant invited plaintiff to call him at home if plaintiff wanted to discuss the board's decision any further.

On March 7, 2005, plaintiff sent defendant an e-mail requesting an immediate appeal of the CHLL board's decision. In that e-mail, plaintiff pointed out that he had been actively involved with CHLL since 2000 and that, during that time, the CHLL board had never once disciplined him, apprised him of any misconduct, or informed him of any complaints from either a parent or an opposing coach concerning his behavior as a coach. Moreover, plaintiff asserted that, because it had reached its coaching decision without first giving plaintiff an opportunity to be heard, the CHLL board had violated the Little League and CHLL constitutions, the Little League and CHLL bylaws, and plaintiff's "Due Process to a fair and impartial hearing." Plaintiff copied this e-mail to both the district and regional directors of Little League.

On March 9, 2005, in a letter signed by defendant in his capacity as CHLL board president, the CHLL board informed plaintiff that his March 7 request for an appeal had been denied. The letter explained that the rules and regulations that plaintiff accused the CHLL board of violating do not apply to the process of selecting coaches. In addition, the letter advised plaintiff that the CHLL board had the full support of both the district and regional Little League headquarters and that both of those bodies had confirmed that the CHLL's coaching decisions were made in full compliance with all relevant procedures.

Two days later, on March 11, 2005, defendant sent plaintiff a personal e-mail to clarify the CHLL board's decision. In that e-mail, defendant explained that the

CHLL board had not taken any disciplinary action against plaintiff but had simply rejected plaintiff's application to coach his son's team. Plaintiff would still be allowed to serve as a parent volunteer "just like 75% of the dads are." Moreover, defendant noted that the CHLL board was willing to place plaintiff's son on a team coached by one of plaintiff's friends, "to give you the best opportunity to participate in whatever way you work out with [that coach]." Although the CHLL board does not normally assign players for reasons such as this, defendant explained that the board did so in this situation "as an attempt to meet you half way." Defendant closed his e-mail by stating that "[w]e aren't looking for a fight" and expressing his hope that "we can put this behind us and move on to play some baseball." Defendant copied the CHLL board on this e-mail.

Later on March 11, 2005, plaintiff responded to defendant's personal e-mail with an e-mail of his own. In that e-mail, plaintiff emphasized that he, too, was "not looking for fight" but was "merely protecting my reputation and my son's well-being." Plaintiff then reiterated that he "respectfully disagreed with the board's original decision to not allow me to coach my only son" and renewed his request to serve as a coach on his son's team. In making this request, plaintiff acknowledged that, as a coach, he would be "subject to the same scrutiny and sanctions as any other coach if my conduct ever became detrimental to the best interest of Little League." Finally, plaintiff accepted the CHLL board's offer to place his son on the specified team "so as to minimize the pain to him and my family." Plaintiff copied the CHLL board on this e-mail.

On March 12, 2005, defendant responded via e-mail to plaintiff's e-mail of the previous day. Defendant began this message by expressing regret that plaintiff's initial response to the board's decision was not more like the

response expressed in plaintiff's March 11 e-mail. According to defendant, had plaintiff initially responded in the way that he did in the March 11 e-mail, or even taken up defendant's March 4 offer "to call me and discuss," plaintiff and the board "may have been able to work something out." Instead, plaintiff "stormed back with accusations and demands and brought District 11 and the Little League Central Region into the picture." Defendant explained that, by "bring[ing] District 11 and the Central Regional office into the middle of all this," plaintiff left the CHLL board with "no alternative but to uphold our original ruling" because "[a] reversal of our decision at this point would destroy any credibility our board has with the District 11 office as well as our own Little League." In closing, defendant confirmed that plaintiff's son would be assigned to the specified team and that plaintiff "will be able to assist [the coach] in any way you can work out." Defendant copied the CHLL board on this e-mail.

During this same time period, plaintiff was a candidate for trustee of the Clarendon Hills village board, with the election to be held on April 5, 2005. Sometime in March 2005, plaintiff was told by his running mates that a Clarendon Hills trustee and a Clarendon Hills resident were both saying that plaintiff had been kicked out of the Clarendon Hills Little League because of his temper and because of his inappropriate behavior toward children.

In January 2006, plaintiff again submitted his name for a coaching position in the CHLL major league, this time for the 2006 season. On February 27, 2006, the CHLL board met to select the managers and coaches for the 2006 season, and again the board rejected plaintiff's request.

Four days later, on March 3, 2006, plaintiff filed a two-count complaint against defendant alleging defama-

tion *per se* and civil conspiracy. Plaintiff later amended his complaint to include an additional count of defamation *per se*. In the amended complaint, plaintiff alleges all of the facts set forth above. In addition, plaintiff alleged, on information and belief, that defendant made a series of false and defamatory statements about plaintiff over the course of the described events. First, plaintiff alleges that, at the March 3, 2005, CHLL board meeting, defendant "made false and defamatory statements about Plaintiff to other board members including that Plaintiff should not be selected as a coach because of a long pattern of misconduct with children and other misconduct." Next, plaintiff alleged that, on March 4, 2005, defendant

"made and published the following statements which he knew were false and which were made to humiliate, embarrass, and harm Plaintiff and to damage his good name and reputation in the community:

(a) that Plaintiff exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches;

(b) that Plaintiff abused players, coaches, and umpires in CHLL; and

(c) that Plaintiff was unfit to be assigned as a CHLL coach to insinuate to the community that Plaintiff was guilty of inappropriate behavior with children and others associated with CHLL."

According to plaintiff, these statements were made to the other members of the CHLL board, other members of CHLL, and certain residents of Clarendon Hills.

Concerning the CHLL board meeting that was held on February 27, 2006, plaintiff alleged, again on information and belief, that defendant at this meeting "made false and defamatory statements about Plaintiff to other board members including that Plaintiff should not be selected as a coach because of a long pattern of misconduct with children and other misconduct." In addition,

plaintiff alleged that, at this same February 27 meeting, defendant

"made and published the following statements which he knew were false and which were made to humiliate, embarrass, and harm Plaintiff and to damage his good name and reputation in the community:

(a) that Plaintiff exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches;

(b) that Plaintiff abused players, coaches, and umpires in CHLL; and

(c) that Plaintiff was unfit to be assigned as a CHLL coach to insinuate to the community that Plaintiff was guilty of inappropriate behavior with children and others associated with CHLL."

According to plaintiff, these statements were made to the other members of the CHLL board and to other residents of Clarendon Hills.

Finally, plaintiff alleged that, on or about March 20, 2006, defendant intentionally "published copies of Plaintiff's complaint" to the members of the CHLL board, to unnamed members of CHLL, and to unnamed residents of Clarendon Hills. Plaintiff then alleged that, on that same day, defendant "intentionally published copies of Plaintiff's Complaint on the CHLL website and disseminated the false and defamatory statements contained in the Complaint to CHLL coaches, members of CHLL, and other residents of Clarendon Hills."

Counts I and II of plaintiff's amended complaint alleged defamation *per se*. The two counts contain identical allegations, except that count I is concerned with the events surrounding the denial of plaintiff's 2005 coaching request, while count II is concerned with the events surrounding the denial of plaintiff's 2006 coaching request. In those counts, plaintiff alleged that defendant intentionally made the false and defamatory statements described above. In addition, plaintiff alleged that, by

making those false and defamatory statements, defendant had imputed plaintiff's reputation and character both in the community and in his professions. Plaintiff alleged that defendant's false and defamatory statements "imputed to the community and beyond that Plaintiff engaged in misconduct with children and other improper conduct while he was serving as a volunteer coach for CHLL," and that plaintiff had engaged in "criminal and other wrongful conduct." Plaintiff also alleged that defendant's false and defamatory statements had "denied Plaintiff the opportunity and enjoyment to be an assigned coach for his only son's CHLL baseball team, and have caused Plaintiff to be embarrassed in front of his son and in the community." Plaintiff sought both compensatory and punitive damages.[1]

Defendant moved to dismiss plaintiff's amended complaint in its entirety pursuant to section 2—615, and the trial court granted the motion. In doing so, the trial court explained that, typically, a defamation complaint alleges that "somebody said something very specifically and he said it very specifically either to a person or a number of people." Plaintiff's complaint, by contrast, was "vague and conclusory," alleging only "sort of summations of—or the context of what a phrase might have been." Moreover, plaintiff's complaint did not allege that "these vague statements were even made specifically to somebody, only that [plaintiff] believes that they may have been made to somebody, for whatever reason he has that belief." Finally, the trial court explained that, "to the extent that [plaintiff's allegations] may suggest *per se* criteria, they are simply opinions capable of innocent

---

[1]The portion of the appellate court's decision affirming the dismissal of plaintiff's civil conspiracy count is not at issue in this appeal. Consequently, we have no need to set forth the allegations contained in that portion of plaintiff's amended complaint.

construction." In so ruling, the trial court emphasized that the dismissal would be without prejudice and that plaintiff would be free to replead if he so desired. The trial court warned plaintiff, however, that:

"whatever it says in the Amended Complaint better be done with great care and caution and understand that, among all the Supreme Court Rules that we have, there is one by the number of 137. And I am going to be looking very carefully at anything that you file."

In the end, plaintiff elected not to replead and instead filed a motion to reconsider the dismissal of his amended complaint. The trial court denied that motion, and plaintiff appealed.

In an unpublished order, the appellate court reversed in its entirety the trial court's dismissal of plaintiff's first amended complaint. No. 2—06—1055 (unpublished order under Supreme Court Rule 23). Defendant then filed a petition for leave to appeal in this court, which we denied. At the same time, however, we entered a supervisory order directing the appellate court to vacate its judgment and reconsider the matter in light of our decision in *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381 (2008). The appellate court did so, and this time it reversed only that portion of that trial court's judgment dismissing plaintiff's defamation *per se* counts.

The appellate court began its analysis by considering whether the three statements that defendant allegedly made at both the March 4, 2005, and February 27, 2006, coaching meetings were defamatory *per se*. The appellate court concluded that the first two of these statements—that plaintiff "exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches" and that plaintiff "abused players, coaches, and umpires in CHLL"—were defamatory *per se* in that they "impute a lack of ability and prejudice the plaintiff in his dental and legal professions." 384 Ill. App. 3d at 959. Ac-

cording to the appellate court, "such professions require a high level of moral character," and "[m]isconduct and abuse, especially as to children, is undoubtedly the type of behavior that would lower the public's perception of the plaintiff's moral character." 384 Ill. App. 3d at 959. However, the third alleged statement—that plaintiff "was unfit to be assigned as a CHLL coach"—was not defamatory *per se* because, rather than impute a lack of ability in plaintiff's professions, the statement "could mean nothing more than that the plaintiff did not fit in with the board members of CHLL." 384 Ill. App. 3d at 959.

The appellate court then concluded that the two alleged defamatory statements were not capable of an innocent construction. According to the appellate court, "[a]lthough there are varying levels of misconduct and abuse of children, any degree of such behavior can hardly be considered innocent." 384 Ill. App. 3d at 960.

Finally, the appellate court considered whether the two alleged defamatory statements were expressions of opinion and therefore protected by the first amendment. On this point, the appellate court first examined whether those statements have a "precise and readily understood meaning." 384 Ill. App. 3d at 963. The court's conclusion was that, although the statements possessed a "readily understood" meaning, they did not possess a "precise" meaning:

> "[T]he statements that the plaintiff 'exhibited a long pattern of misconduct' and 'abused players, coaches, and umpires' have a readily understood meaning. Such statements would conjure up images in the listeners' minds of verbal abuse, sexual abuse, or some type of physical abuse. However, the statements are not precise in the sense that they do not give insight into the exact type of abuse or misconduct to which the defendant was referring. Thus, this consideration does not significantly aid our analysis." 384 Ill. App. 3d at 964.

The court next examined whether the alleged defama-

tory statements were "susceptible to being objectively verifiable as true or false." 384 Ill. App. 3d at 964. The court concluded that they were, explaining that "plaintiff's amended complaint alleges that he had been a CHLL coach for the 2000 through 2004 seasons" and that therefore "[i]nformation could be gathered from those who interacted with the plaintiff during those seasons to determine if the defendant's allegations are true." 384 Ill. App. 3d at 964. Lastly, the court determined that the statements' social context "signals that they have factual content." 384 Ill. App. 3d at 964. According to the court, "[a] CHLL board meeting where the members are picking coaches for the coming season is not the type of social context where one would expect the use of 'epithets, fiery rhetoric or hyperbole.' " 384 Ill. App. 3d at 964. The court then added that:

> "the defendant's allegations were not merely that the plaintiff was abusive, rude, or incapable of appropriately managing a little league team. The defendant allegedly stated that the plaintiff 'exhibited a long pattern of misconduct' and 'abused' CHLL players, coaches, and umpires. A 'pattern' of misconduct implies that the plaintiff engaged in a series of acts of misconduct against children. [Citation.] Here, by using the terms 'exhibited a long pattern of misconduct' and 'abused,' the defendant implies that his statements are based on specific factual events." 384 Ill. App. 3d at 964-65.

Based on all of these considerations, the appellate court ultimately concluded that "the defendant's alleged statements can be reasonably interpreted as stating actual facts about the plaintiff and are, therefore, not entitled to first amendment protection." 384 Ill. App. 3d at 965.

Having determined that defendant's statements, as alleged by plaintiff, were actual assertions of fact that were both defamatory *per se* and not reasonably capable of an innocent construction, the appellate court reversed that portion of the trial court's judgment dismissing

plaintiff's defamation *per se* claims. Defendant again appealed to this court, and this time we granted his petition for leave to appeal. 210 Ill. 2d R. 315(a).

## ANALYSIS

A section 2—615 motion to dismiss tests the legal sufficiency of the complaint. On review, the question is "whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Vitro v. Mihelcic*, 209 Ill. 2d 76, 81 (2004). All facts apparent from the face of the pleadings, including the exhibits attached thereto, must be considered. *Beahringer v. Page*, 204 Ill. 2d 363, 365 (2003); *Haddick v. Valor Insurance*, 198 Ill. 2d 409, 414 (2001). A cause of action should not be dismissed under section 2—615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery. *Marshall v. Burger King Corp.*, 222 Ill. 2d 422, 429 (2006). The standard of review is *de novo*. *Vitro*, 209 Ill. 2d at 81.

To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. *Krasinski v. United Parcel Service, Inc.*, 124 Ill. 2d 483, 490 (1988). A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him. *Kolegas v. Heftel Broadcasting Corp.*, 154 Ill. 2d 1, 10 (1992). A statement is defamatory *per se* if its harm is obvious and apparent on its face. *Owen v. Carr*, 113 Ill. 2d 273, 277 (1986). In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a person has commit-

ted a crime; (2) words that impute a person is infected with a loathsome communicable disease; (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties; (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession; and (5) words that impute a person has engaged in adultery or fornication. *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998). Although a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba*, the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content. See *Mittelman v. Witous*, 135 Ill. 2d 220, 229-30 (1989), *abrogated on other grounds by Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16 (1993). Precision and particularity are also necessary so that the defendant may properly formulate an answer and identify any potential affirmative defenses. See, *e.g.*, *Krueger v. Lewis*, 342 Ill. App. 3d 467, 470 (2003). The preliminary construction of an allegedly defamatory statement is a question of law, and our review therefore is *de novo. Tuite*, 224 Ill. 2d at 511.

Here, plaintiff's amended complaint does not set forth the allegedly defamatory words *in haec verba*. On the contrary, both the publication and the content of defendant's alleged statements are pled strictly "on information and belief," and none of the allegedly defamatory words appears in quotation marks. The question, then, becomes whether plaintiff's amended complaint nevertheless sets forth the substance of those statements with sufficient specific precision and particularity so as to permit both initial judicial review and the formulation of an answer and potential affirmative defenses. We hold that it does not.

The core of plaintiff's defamation *per se* claims is the

allegation that, at both the 2005 and 2006 CHLL coaching meetings, defendant

> "made and published the following statements, which he knew were false and which were made to humiliate, embarrass, and harm Plaintiff and to damage his good name and reputation in the community:
>> (a) Plaintiff exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches; [and]
>> (b) Plaintiff abused players, coaches, and umpires in CHLL."[2]

On their face, these allegations do not set forth a precise and particular account of the statements that defendant allegedly made. Rather, they set forth only a summary of the types of statements that plaintiff may or may not have a reason to believe defendant made. To begin with, these allegations are completely devoid of any specifics, such as what type of misconduct plaintiff exhibited; the nature of any alleged "abuse"; or how that abuse manifested itself in relation to players, coaches and umpires. Did defendant assert that plaintiff abused players in one way, and coaches and umpires in another? Or did he assert that plaintiff abused players, coaches, and umpires in exactly the same way? Was the "abuse" strictly verbal, or was it also physical? Likewise, when defendant allegedly accused plaintiff of engaging in "misconduct *** which was not acceptable for CHLL coaches," was he referring only to CHLL rules violations, or was he referring to something else? The need for details on these points is demonstrated perfectly by an argument that plaintiff makes in his brief before this

---

[2]Plaintiff is not appealing the appellate court's determination that defendant's third alleged statement (that plaintiff "was unfit to be assigned as a CHLL coach to insinuate to the community that Plaintiff was guilty of inappropriate behavior with children and others associated with CHLL") is not defamatory *per se*.

court. According to plaintiff, "[i]n this day and age, defendant's statements of 'abuse' of children could never be reasonably construed [innocently]." This argument is clearly meant to suggest that defendant's statements relating to plaintiff's behavior toward children and players were sinister in a way that his statements relating to plaintiff's behavior toward coaches and umpires were not. The problem, of course, is that there is absolutely nothing in plaintiff's complaint to support this suggestion. All we have is a generic charge of "abuse" that is applied equally to players, coaches, and umpires alike. And without knowing what specific conduct defendant allegedly averred, we have no way of assessing whether defendant's words were defamatory *per se*.

A separate but related problem is that plaintiff's first amended complaint sets forth both the publication and content of defendant's allegedly defamatory statements strictly "on information and belief," without ever setting forth a basis for such information and belief. Although this court has never been called upon to consider the conditions under which the essential elements of defamation *per se* may be pled "on information and belief," we have addressed the issue in relation to the analogous tort of common law fraud. Like defamation *per se*, common law fraud demands a "higher standard" when it comes to pleading. *Board of Education of the City of Chicago v. A, C & S, Inc.*, 131 Ill. 2d 428, 457 (1989). Specifically, "[t]he facts which constitute an alleged fraud must be pleaded with sufficient specificity, particularity and certainty to apprise the opposing party of what he is called upon to answer." *A, C & S, Inc.*, 131 Ill. 2d at 457. *Murphy v. Murphy*, 189 Ill. 360, 366 (1901). The reason for this higher standard is " 'to protect against baseless complaints' " and to " 'protect[ ] defendants from the harm to their reputations that follows charges of serious wrongdoing.' " *A, C & S, Inc.*, 131 Ill. 2d at 457, quoting

*Helfant v. Louisiana & Southern Life Insurance Co.*, 459 F. Supp. 720, 726 (E.D.N.Y. 1978). Given this higher standard, this court has held that " 'an allegation of fraud upon information and belief can not be sustained, unless the facts, upon which the belief is founded, are stated in the pleadings.' " *Murphy*, 189 Ill. at 366, quoting 9 Enc. Pl. & Prac. at 694.

We see no reason why this same principle should not also apply to defamation *per se* claims. Like a common law fraud claim, a defamation *per se* claim must be pled with a heightened level of precision and particularity. This higher standard is premised upon an important policy consideration, namely, that a properly pled defamation *per se* claim relieves the plaintiff of proving actual damages. See *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 88 (1996).

Of course, a plaintiff can always avoid this heightened pleading standard by seeking to establish a defamation *per quod* claim rather than a defamation *per se* claim, as damages are not presumed in *per quod* claims. See *Tuite*, 224 Ill. 2d at 501. But if a plaintiff does attempt to avail himself of the extraordinary presumption that attaches to defamation *per se*, he simply must plead the relevant facts on something more than his mere "belief." This does not mean that the facts constituting defamation *per se* may never be pled on information and belief. On the contrary, we recognize that pleading on information and belief will often be necessary, especially in cases such as this where the allegedly defamatory statements were made outside the plaintiff's presence and therefore without the plaintiff's direct knowledge. We are holding only that, when the relevant facts *are* so pled, the factual basis informing the plaintiff's belief must also be pled. Unlike the facts relating to the allegedly defamatory statements themselves, the facts informing plaintiff's belief will always be within plaintiff's direct knowledge

and therefore fully capable of being pled with the requisite precision and particularity.

Here, plaintiff's first amended complaint does not allege that defendant *in fact* stated that plaintiff "exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches" and that plaintiff "abused players, coaches, and umpires in CHLL." Rather, it alleges only that plaintiff is informed and believes that defendant made such statements, and it does so in a factual vacuum. The first amended complaint nowhere states either how plaintiff came to be so informed or what facts caused him to believe this. Did someone who was present at the 2005 and 2006 meetings tell plaintiff that defendant made these statements? Did plaintiff read something that suggested that defendant was making such statements? Or is this something plaintiff just happens to believe, without any objective basis? The first amended complaint simply does not say, and for this reason as well, it is facially deficient.

We also note that, were we to deem plaintiff's pleading sufficiently precise and particular, defendant would find himself in a very difficult position. According to plaintiff's complaint, defendant falsely stated that plaintiff "abused players, coaches, and umpires in CHLL" and that plaintiff "exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches." The complaint nowhere identifies, however, the actual words that defendant used or the particular type of "abuse" and "misconduct" to which defendant allegedly referred. This is a fatal shortcoming, as the words "abuse" and "misconduct" have very broad meanings. According to Webster's,[3] the primary defini-

[3]In his brief before this court, plaintiff relies exclusively upon the definitions of "abuse" and "misconduct" that are set forth in the eighth edition of Black's Law Dictionary. Our task in this case,

tion of the verb "abuse" is "reproach coarsely." Webster's Third New International Dictionary 8 (1993). But "abuse" can also mean "violate sexually." Webster's Third New International Dictionary 8 (1993). Likewise, the primary definition of "misconduct" is "mismanagement." Webster's Third New International Dictionary 1443 (1993). But "misconduct" can also mean the "deliberate violation of a rule of law or standard of behavior," or it can mean "sexual immorality." Webster's Third New International Dictionary 1443 (1993). By not pleading either the actual words that defendant used or the particular type of "abuse" or "misconduct" to which defendant allegedly referred, plaintiff has made it virtually impossible for defendant to formulate a responsive pleading. If plaintiff is suggesting that defendant accused him of sexually or physically abusing CHLL players, coaches, and umpires, the appropriate response might be to file an answer and deny that allegation outright. But if plaintiff is suggesting only that defendant accused him of coarsely reproaching CHLL players, coaches, and umpires, the appropriate response might be to file a section 2—615 motion to dismiss arguing that an accusation of coarseful reproach does not rise to the level of defamation *per se*. Likewise, if the word "misconduct," as used in plaintiff's amended complaint, refers to "sexual immorality," defendant might respond with an answer and denial. But if "misconduct" refers only to mismanagement or a rules violation, defendant might respond with a motion to dismiss arguing that an accusation of that nature does not amount to defamation *per se*. As it stands, defendant has no idea what *exactly* plaintiff is ac-

---

however, is to give defendant's words their "natural and obvious meaning." While useful for many purposes, Black's is not a valuable resource for this purpose.

cusing him of, and consequently defendant cannot intelligently formulate his defense.

Finally, the summary nature of plaintiff's allegations is highlighted by the fact that plaintiff's first amended complaint sets forth the identical allegations *word for word* in relation to both the 2005 and 2006 CHLL coaches meetings. In relation to both of these meetings, which occurred nearly one year apart, plaintiff alleged that defendant

"made and published the following statements, which he knew were false and which were made to humiliate, embarrass, and harm Plaintiff and to damage his good name and reputation in the community:

(a) Plaintiff exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches; [and]

(b) Plaintiff abused players, coaches, and umpires in CHLL."

As discussed above, on their face, these allegations do not set forth precise and particular statements so much as plaintiff's summaries of the types of statements defendant presumably made at the 2005 and 2006 CHLL coaching meetings. These allegations are both vague and generic, providing no specifics whatsoever concerning the actual words that defendant used or the actual types of "abuse" or "misconduct" to which defendant was referring. The fact that plaintiff is then unable to differentiate or distinguish in any way between defendant's alleged statements at the 2005 coaches meeting and defendant's alleged statements at the 2006 coaches meeting is just further confirmation that plaintiff is not pleading precise and particular facts but rather only conclusions, inferences, and assumptions.

For these reasons, we conclude that the trial court properly granted defendant's section 2—615 motion to dismiss plaintiff's amended complaint. In relation to defendant's statements, plaintiff's allegations are neither

precise nor specific, rendering impossible both meaningful judicial scrutiny and the formulation of a responsive pleading. In reaching this result, we reiterate that the absence of quotation marks around defendant's alleged statements is not the problem and that a defamation *per se* claim can be stated even absent a direct quote. See *Mittelman*, 135 Ill. 2d at 229-30. The problem here is a lack of precision and particularity, plain and simple.

Now, at oral argument before this court, plaintiff's counsel rejected the idea that plaintiff's first amended complaint fails to set forth defendant's actual words. According to plaintiff's counsel, "on information and belief, these are the actual words" and "they have to be taken as true for purposes of this motion." For the reasons set forth above, we dispute counsel's representation that the first amended complaint purports to set forth defendant's actual words. And in any event, the fact that those statements are pled solely on plaintiff's unsupported belief precludes us from treating them as truly and accurately set forth. That said, even if we were to accept counsel's representation that the first amended complaint truly and accurately sets forth defendant's actual words, that complaint would still be subject to dismissal, only now under the innocent-construction rule.

It is well settled that, even if an alleged statement falls into one of the categories of words that are defamatory *per se*, it will not be actionable *per se* if it is reasonably capable of an innocent construction. *Bryson*, 174 Ill. 2d at 90. Under the "innocent-construction rule," a court must consider the statement *in context* and give the words of the statement, and any implications arising from them, their natural and obvious meaning. *Kolegas*, 154 Ill. 2d at 11. Indeed, this court has emphasized that the context of the statement is critical in determining its meaning, as a given statement may convey entirely different meanings when presented in different contexts.

*Tuite v. Corbitt*, 224 Ill. 2d 490, 512 (2006). If the statement may reasonably be innocently interpreted, it cannot be actionable *per se*. *Chapski v. Copley Press*, 92 Ill. 2d 344, 352 (1982). Stated differently, "a statement 'reasonably' capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted. There is no balancing of reasonable constructions \*\*\*." *Mittelman v. Witous*, 135 Ill. 2d 220, 232 (1989). At the same time, when the defendant clearly intended and unmistakably conveyed a defamatory meaning, a court should not strain to see an inoffensive gloss on the statement. *Bryson*, 174 Ill. 2d at 93.

Here, plaintiff alleges that defendant

"made and published the following statements, which he knew were false and which were made to humiliate, embarrass, and harm Plaintiff and to damage his good name and reputation in the community:

(a) Plaintiff exhibited a long pattern of misconduct with children which was not acceptable for CHLL coaches; [and]

(b) Plaintiff abused players, coaches, and umpires in CHLL."

Under the innocent-construction rule, the question we must address is whether, considered in context and given their natural and obvious meaning in light of that context, defendant's alleged statements may reasonably be interpreted innocently. Clearly, they can.

According to plaintiff, the critical words here are "abuse" and "misconduct," which as we explained above are words with very broad meanings. The primary definition of "abuse" is to "reproach coarsely." But "abuse" can also mean "violate sexually." Likewise, while the primary definition of "misconduct" is "mismanagement," that word can also mean "the intentional violation of a rule of law or standard of behavior," or even "sexual immorality." As for the context of these alleged statements, plaintiff alleges that defendant first made

them at the March 3, 2005, CHLL board meeting, which was held "to select the coaches and managers for the 2005 season." According to the first amended complaint, defendant sent plaintiff an e-mail message the very next day informing plaintiff that, although he was not selected as one of the coaches for the 2005 season, plaintiff "will be allowed to help [his son's coach] with practices and pre-game activities." Plaintiff and defendant then exchanged a series of related e-mails over the next week, during which defendant twice confirmed that, although plaintiff would not be assigned as an official coach, he would be free to assist with his son's team "in any way" he could work out with the coach. Plaintiff alleges that defendant then repeated these exact same statements at the 2006 CHLL board meeting, which was held on or about February 27, 2006, and at which plaintiff's coaching application was again denied "[w]ithout any proper justification."

Considering both the substance of defendant's alleged statements and the context in which they allegedly were made, we find that those statements are reasonably capable of an innocent construction. According to plaintiff's complaint, defendant, in his capacity as president of the CHLL board, accused plaintiff of "misconduct with children which was not acceptable for CHLL coaches" and of "abus[ing] players, coaches, and umpires in CHLL." These statements were made in the context of selecting coaches for the CHLL season, and both statements were specifically confined to the context of Little League coaching. Moreover, the alleged statements were followed immediately by multiple assurances from defendant that, although he would not be assigned a formal coaching position, plaintiff would be free to assist his son's team "with practices and pre-game activities." Given this context, we do not believe it reasonable to conclude that defendant was accusing plaintiff of the

types of abuse and misconduct that would impute a lack of integrity in plaintiff's chosen professions—that is, of physically or sexually abusing players, coaches, and umpires, or of some form of "immorality" with children that was not acceptable for CHLL coaches. Were defendant's allegations of this nature, defendant presumably would have taken every step to ensure that plaintiff did not come in contact with CHLL players, coaches, or umpires. At the very least, defendant would not have repeatedly and contemporaneously invited plaintiff to assist his son's team "with practices and pre-game activities" and to participate "in any way" he could work out with his son's coach. Yet, according to plaintiff's own complaint, this is exactly what defendant did. The only reasonable interpretation, therefore, is that defendant was accusing plaintiff not of the worst forms of abuse or misconduct, but only of the most innocuous forms of abuse and misconduct—that is, of "coarsely reproaching" players, coaches, and umpires, and of "mismanagement" that was not acceptable for CHLL coaches. And accusations such as this simply do not rise to the level of defamation *per se*. Behavior of this nature is neither unusual nor unexpected from parents and coaches in amateur athletics, and both of defendant's alleged statements are specifically confined to this context. More importantly, defendant's obvious openness to plaintiff's active, albeit informal, participation in CHLL activities confirms that defendant was saying only that plaintiff is not suited for CHLL coaching, not that the children of Clarendon Hills need to be protected from plaintiff. And as the appellate court below correctly held, the assertion that plaintiff is not suited for CHLL coaching is not defamatory *per se*, as "it does not prejudice the plaintiff or impute a lack of ability in his professions" but could mean nothing more than that plaintiff "did not fit in with" the CHLL organization. 384 Ill. App. 3d at 959.

Accordingly, we conclude that, even if the first amended complaint does set forth the actual words of defendant's alleged statements, those statements are reasonably capable of an innocent construction and therefore not defamatory *per se.*

## CONCLUSION

For these reasons, we reverse that portion of the appellate court's judgment reversing the dismissal of plaintiff's defamation *per se* claims. In all other respects, the judgment of the appellate court is affirmed.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed.*