# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Pompa v. Swanson*, 2013 IL App (2d) 120911

---

| | |
|---|---|
| Appellate Court Caption | JOSEPH POMPA, Plaintiff-Appellant, v. PAUL SWANSON, Defendant-Appellee. |
| District & No. | Second District<br>Docket No. 2-12-0911 |
| Filed | May 6, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Plaintiff's complaint alleging defamation *per se* and intentional interference with the expectation of a retirement gift was properly dismissed for failure to state a cause of action, since there was no indication the statements defendant made about the work plaintiff performed for the trade union to which they belonged were intended to defame plaintiff, the statements were an expression of defendant's nonactionable opinion during a union meeting on whether to give plaintiff a gift, and they were subject to a qualified privilege, and Illinois courts have not extended the tort of intentional interference with prospective economic advantage to include interference with an expected retirement gift. |
| Decision Under Review | Appeal from the Circuit Court of Kane County, No. 11-L-548; the Hon. Judith M. Brawka, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Stanley H. Jakala and Barbara J. Bell, both of Berwyn, for appellant.

Gary K. Mickey, Bernard K. Weiler, and Jessica L. Drahos, all of Mickey, Wilson, Weiler, Renzi & Anderson, P.C., of Aurora, for appellee.

Panel

JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.

Justices Hudson and Birkett concurred in the judgment and opinion.

**OPINION**

¶ 1 Plaintiff, Joseph Pompa, appeals from an order of the circuit court of Kane County dismissing with prejudice his two-count, amended complaint filed against defendant, Paul Swanson. Plaintiff contends that he stated a claim for defamation *per se* in count I and a claim for intentional interference with the expectation of a retirement gift in count II. Because plaintiff failed to state a claim for either defamation *per se* or intentional interference with the expectation of a retirement gift, we affirm.

¶ 2          I. BACKGROUND

¶ 3 The following facts are derived from the allegations in count I of plaintiff's amended complaint. Plaintiff was employed by Carpenters Union 839 from 1979 to 2010. During his tenure, plaintiff was elected five times to the office of financial secretary and served a total of 20 years in that position. He also worked several years as a business manager for the union. While employed for the union, plaintiff had a "good reputation," was a "highly valued employee and union officer," and performed all of his job responsibilities in a "satisfactory manner."

¶ 4 Defendant also worked for the union and served one term as president. Defendant expressed his dislike of plaintiff to both plaintiff and other union employees. Defendant also was jealous of plaintiff's influence in union matters, particularly elections.

¶ 5 In 2009, defendant, in an effort to undermine certain union election candidates supported by plaintiff, circulated a flyer among union members. The flyer stated that plaintiff was paid a salary based on 80 hours per month when the average financial secretary's salary was based on 25 to 30 hours per month. In reality, plaintiff's salary was based on 80 hours per month because that was the amount of time he actually spent on that job per month. In the 2009 election, only two of the six candidates supported by defendant were elected. This angered defendant, who continued to refuse to speak to plaintiff.

¶ 6 On or about September 30, 2010, plaintiff decided to retire. The union, in appreciation

for work performed by its full-time employees, would, on a "regular basis," provide those employees with substantial retirement "gifts." For example, six prior employees received retirement gifts ranging from a weekend at Lake Geneva, with all expenses paid, to $30,000, consisting of money from the union and the proceeds from a retirement party.

¶ 7     On or about October 8, 2010, the executive board met for the purpose of discussing plaintiff's "retirement gift." Defendant attended the meeting in his capacity as a business representative. Defendant had no duty to speak at the meeting about plaintiff's job performance and did so only by permission.

¶ 8     During the meeting, defendant stated that plaintiff "was not deserving of any [retirement] gift." Although plaintiff was not present, several former coworkers later told him that defendant made false statements about him in an attempt to deprive him of a "customary retirement gift." Upon information and belief, defendant stated that plaintiff had "performed his job unsatisfactorily" and thus did not deserve a retirement gift. Further, upon information and belief, defendant falsely stated that plaintiff was overpaid because his salary was based on 80 hours per month while the average financial secretary's salary was based on 25 to 30 hours per month. The executive board voted not to give plaintiff a retirement gift.

¶ 9     The amended complaint further alleged that defendant's statement that plaintiff performed his job unsatisfactorily was false. It also alleged that the statement that plaintiff's salary was based on 80 hours per month while the average salary was based on 25 to 30 hours was false. Such statements were allegedly false because: (1) plaintiff was overwhelmingly elected financial secretary five times; (2) plaintiff actually worked 80 hours per month; and (3) plaintiff was well respected for his diligence and commitment to the union, and even defendant had praised plaintiff in the past.

¶ 10    The following statements by defendant to the executive board were alleged to be defamatory *per se*: (1) that plaintiff did not deserve a retirement gift given his poor job performance, because it imputed "incompetency to [plaintiff] and/or lack of integrity"; and (2) that plaintiff was overpaid, because it imputed that plaintiff's actions as financial secretary were "imprudent and/or he lacked integrity." It was further alleged that defendant made these statements knowing them to be false or with reckless disregard as to their truth, because defendant knew that plaintiff enjoyed an "excellent professional reputation." Defendant's statements were willful and wanton and calculated to cause plaintiff to lose a substantial retirement gift. Defendant also made these statements with actual malice.

¶ 11    Count II alleged that plaintiff had a "reasonable expectation of receiving a retirement gift," defendant knew of that reasonable expectation, defendant purposely interfered with that reasonable expectation by defaming plaintiff at the board meeting, and such defamation resulted in plaintiff's not receiving a retirement gift despite his 31 years of service with the union.

¶ 12    Defendant filed a motion pursuant to section 2-615 of the Code of Civil Procedure (735 ILCS 5/2-615 (West 2010)), seeking dismissal of both counts of plaintiff's amended complaint. After written briefing and oral argument, the trial court granted defendant's motion with prejudice as to both counts. Plaintiff, in turn, filed this timely appeal.

## II. ANALYSIS

Plaintiff raises the following issues in this appeal: (1) whether he sufficiently stated a claim for defamation *per se* by alleging that defendant falsely told the executive board that he was overpaid and did a poor job as a union employee; and (2) whether he can bring a cause of action for intentional interference with an expected retirement gift, based on defendant's defamatory statements which caused the board to deny him the gift. We consider each issue in turn.

A section 2-615 motion to dismiss tests the legal sufficiency of a complaint. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). "On review, the issue is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." (Internal quotation marks omitted.) *Id.* All facts apparent from the face of the pleadings and any attached exhibits must be considered. *Id.* "A cause of action should not be dismissed under section 2-615 unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* Review of a trial court's dismissal under section 2-615 is *de novo*. *Id.*

To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of the statement to a third party, and that the publicized statement damaged the plaintiff. *Id.* A defamatory statement is one that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with him. *Id.*

"A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Id.* Relevant to this case, there are two categories of statements that are considered defamatory *per se*: (1) words that impute that a person is unable to perform, or lacks integrity in performing, his employment duties; and (2) words that impute a person's lack of ability, or otherwise prejudice a person, in his profession. See *id.* at 491-92.

Although a complaint for defamation *per se* need not set forth the allegedly defamatory words *in haec verba*, the substance of the statement must be pled with sufficient precision and particularity so as to permit initial judicial review of its defamatory content and to allow the defendant to properly formulate an answer and identify any potential defenses. *Id.* at 492. Where the alleged statements are pled strictly on "information and belief," and none of the allegedly defamatory words are quoted, the question becomes whether the complaint nevertheless sets forth the substance of the statements with sufficient precision and particularity so as to permit both initial judicial review and the formulation of both an answer and any affirmative defenses. *Id.* This heightened pleading standard reflects the important policy consideration that a properly pled defamation *per se* claim relieves the plaintiff from proving actual damages. *Id.* at 495. The preliminary construction of an allegedly defamatory statement is a question of law, and the appellate court's review is *de novo*. *Id.* at 492.

Here, initially, we conclude that, while plaintiff used the phrase "[u]pon information and belief" in referring to the allegedly defamatory *per se* statements, unlike in *Green* plaintiff specified the precise nature of the two operative statements. The two alleged statements, that plaintiff was overpaid and performed his job unsatisfactorily, were sufficiently precise to

allow initial review and to permit defendant to respond.

¶ 20    That said, a statement that is allegedly defamatory *per se* is not actionable if it is reasonably capable of an innocent construction. *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 580 (2006). The innocent-construction rule requires a court to consider the statement in context and to give the words of the statement, and any implications arising therefrom, their natural and obvious meaning. *Id.* If, as so construed, the statement may reasonably be innocently interpreted, it is not actionable *per se*. *Id.* A statement reasonably capable of a nondefamatory interpretation, given its verbal or literary context, should be so interpreted. *Id.* That is, the court must interpret the words of the statement as they appear to have been used and according to the idea they were intended to convey to a reasonable listener. *Id.* However, when the defendant clearly intended, and unmistakably conveyed, a defamatory meaning, a court should not strain to see an inoffensive gloss on the statement. *Id.*

¶ 21    In this case, we consider whether the two allegedly defamatory *per se* statements are capable of an innocent construction. When viewed in the context of the union board meeting specially set to consider whether plaintiff should receive a retirement gift, defendant's statements were clearly intended to convey and support his position that plaintiff did not deserve such a gift. Of course, defendant was entitled to express his views on that topic and was given permission to do so during the meeting. Such statements, as alleged, were made for the limited purpose of providing information to the board concerning the narrow issue of plaintiff's potential gift. Additionally, the statements were made in a confined setting with a limited audience that had gathered for a specific purpose. There is no indication from the allegations that defendant clearly intended and unmistakably conveyed the statements to defame plaintiff as opposed to merely attempting to influence the board's decision regarding plaintiff's gift. Because the allegedly defamatory *per se* statements are capable of an innocent construction, they are not actionable, and the trial court properly dismissed count I on that basis.

¶ 22    Alternatively, even if an allegedly defamatory *per se* statement is not subject to an innocent construction, it still might enjoy constitutional protection as an expression of opinion. *Id.* at 581. However, there is no artificial distinction between opinion and fact. *Id.* "[A] false assertion of fact can be defamatory even when couched within apparent opinion or rhetorical hyperbole." *Id.* "[I]t is well established that statements made in the form of insinuation, allusion, irony, or question, may be considered as defamatory as positive and direct assertions of fact." (Internal quotation marks omitted.) *Id.* Nor can a defendant "escape liability for defamatory factual assertions simply by claiming that the statements were a form of ridicule, humor, or sarcasm." *Id.* Several considerations inform the court in assessing whether a particular statement is actionable fact versus protected opinion: (1) "whether the statement has a precise and readily understood meaning"; (2) "whether the statement is verifiable"; and (3) "whether the statement's literary or social context signals that it has factual content." *Id.*

¶ 23    Here, the alleged statement that plaintiff "performed his job unsatisfactorily" is a classic form of opinion when assessed via the above-stated factors. First, it does not have a precise and readily understood meaning. The characterization of someone performing his job

unsatisfactorily, absent reference to specific factual criteria for measuring that performance, is merely a generalized, if not vague, description of job performance. Second, the statement is not verifiable in this context. There are no allegations regarding any particular parameters of job performance that would allow a reasonable person to ascertain whether in fact plaintiff performed his job satisfactorily or otherwise. For instance, there are no allegations that defendant based his statement on any actual performance reviews or that actual performance reviews would show that defendant's characterization was false. Third, the context in which the statement was made does not indicate that it was factual. Rather, based on the allegations, it is apparent that the board considered defendant's statements for the sole purpose of deciding whether to provide plaintiff with a retirement gift. There is no indication that the board was considering whether in fact plaintiff had performed his job satisfactorily over the years. Nor is it reasonable to infer that anyone listening would have perceived the statement as factual in terms of how plaintiff actually had performed his job over the course of his 31-year tenure. For all these reasons, we agree with the trial court that the statement that plaintiff performed his job unsatisfactorily was nonactionable opinion.

¶ 24    The remaining statement, that plaintiff was overpaid, is also opinion as opposed to fact. As the trial court explained, this is a perfect example of opinion because whether someone is overpaid is highly subjective. Therefore, the statement does not have a precise and readily understood meaning under most circumstances, including those alleged here. Further, such a statement is not verifiable, as regardless of what plaintiff was actually paid in relation to the amount and quality of his work, reasonable people could certainly disagree as to whether the pay was excessive. Finally, in the context of a decision as to whether to provide plaintiff with a retirement gift, which was obviously a discretionary one as reflected by the meeting and vote, no reasonable person would conclude that the statement was based on any underlying factual content. While the statement referred to the number of hours worked per month, it still stated an opinion based on that information. Plaintiff does not assert that the hours he reportedly worked per month were false, but rather asserts that it was false to say he was overpaid based on those hours. The operative word for purposes of plaintiff's defamation claim is "overpaid." The use of that word is a classic form of opinion in the context alleged. Therefore, we agree with the trial court that this statement was nonactionable opinion.

¶ 25    Defendant alternatively contends that his statements are qualifiedly privileged as they were made during a union meeting about official business. Plaintiff does not contend that a qualified privilege does not exist in this case. Rather, he responds that he has overcome the privilege. In support, he points to his allegations that defendant made the statements intending to harm him, that defendant knew they were false, and that defendant made them with a reckless disregard for their truth or falsity.

¶ 26    "A defamatory statement is not actionable if it is privileged." *Naleway v. Agnich*, 386 Ill. App. 3d 635, 639 (2008) (citing *Solaia*, 221 Ill. 2d at 585). There are two classes of privileged statements: those subject to an absolute privilege and those that are conditionally or qualifiedly privileged. *Id.* A qualified privilege can be exceeded, and thereby defeated, in circumstances where the defendant makes false statements with an intent to injure or with reckless disregard for their truth. *Id.*

-6-

¶ 27 "A qualified privilege protects communications that would normally be defamatory and actionable, in order to effect the policy of protecting honest communication of misinformation in certain favored circumstances and thus facilitate the availability of correct information." *Id.* "To determine if a qualified privilege exists, a court looks only to the occasion itself for the communication and determines as a matter of law and general policy whether the occasion created some recognized duty or interest to make the communication so as to make it privileged." (Internal quotation marks omitted.) *Id.* at 639-40. In deciding whether a qualified privilege exists, a court is to consider only the general type of communication, not the particular communication involved in the case under consideration. *Id.* at 640. The issue of whether a qualified privilege exists is one of law, but whether the defendant abused the privilege in making the allegedly defamatory statement is a question of fact. *Id.*

¶ 28 The threshold question here is whether a qualified privilege exists for statements made during a union meeting and pertaining to official union business. The parties agree that those statements are subject to a qualified privilege. Notwithstanding this agreement, we will address the issue.

¶ 29 Our research does not reveal any Illinois case holding that there is a qualified privilege for allegedly defamatory statements made during a union meeting and concerning official union business. The Court of Appeals for the Seventh Circuit, however, in applying Illinois law related to qualified privilege in similar contexts, has held that such a privilege exists for defamatory statements made in the context of a union meeting. *Sullivan v. Conway*, 157 F.3d 1092, 1098 (7th Cir. 1998). In so ruling, the Seventh Circuit explained that it would be a disservice to the administration of a union if the responsible officers of a union were inhibited by fear of defamation suits from making, within the confines of nonpublic meetings devoted to the affairs of the union, candid criticisms of persons. *Id.* While that case is not binding on this court, we consider its reasoning persuasive and agree that such a qualified privilege should apply in the context alleged in this case.

¶ 30 Having said that, we must next decide whether plaintiff has overcome the privilege by alleging sufficient facts to show that defendant made the statements with the intent to injure plaintiff or with reckless disregard for the truth of the statements. In that regard, plaintiff points to the allegations that defendant disliked him, was jealous of him, was angered by certain election results, and has refused to speak to plaintiff for several years, as supporting his additional allegations that defendant made the statements intending to injure him or with reckless disregard for their truth.

¶ 31 These allegations, even when viewed in the light most favorable to plaintiff, are insufficient to overcome the qualified privilege at issue here. While it is evident from the amended complaint that defendant was not fond of plaintiff and desired that plaintiff not receive a retirement gift, such allegations do not imply that defendant spoke with the intent to injure plaintiff in the sense of his reputation. Nor is there any indication that defendant spoke with reckless disregard for the truth. Even if such statements were considered factual, they were subject to differing views and were made as part of a discussion regarding whether plaintiff should receive a retirement gift. A plaintiff is required to supply more significant allegations of malice in this context; otherwise, speakers who desire to make "candid

criticisms" during nonpublic, union meetings might be inhibited from doing so by fear of a defamation suit. See *id.* Therefore, we hold that plaintiff's allegations do not overcome the qualified privilege accorded defendant's statements during an official union meeting.

¶ 32    Having concluded that count I was properly dismissed for the foregoing reasons, there is no need to address, as an alternative basis for dismissing the defamation *per se* claim, the issue of whether plaintiff was a limited public figure. However, we note that it appears unlikely that he was, as it is not alleged that he was a prominent union executive involved in a public controversy. See *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 335-36 (1999).

¶ 33    In count II of his amended complaint, plaintiff alleged that he had a reasonable expectation of receiving a retirement gift and that defendant intentionally interfered with that expectation when he made the false statements to the executive board. He further alleged that this expectation was based on the union policy of having provided retirement gifts to certain retiring employees in appreciation of their work. In contending that he has stated a cause of action for the intentional interference with this prospective retirement benefit, plaintiff relies on the case of *Nemeth v. Banhalmi*, 99 Ill. App. 3d 493 (1981). In that regard, he asserts that *Nemeth* recognized a cause of action for the intentional interference with an expectancy under a will and that that tort is "close in nature" to the claim he brings here.

¶ 34    While Illinois courts recognize the more general tort of intentional interference with prospective economic advantage (see *Village of Itasca v. Village of Lisle*, 352 Ill. App. 3d 847, 858 (2004)), no Illinois court has extended the tort to include interference with an expected retirement gift. Moreover, the facts as alleged here do not satisfy one of the necessary elements of the tort of intentional interference with prospective economic advantage.

¶ 35    To properly plead the tort, a plaintiff must allege, among other things, a reasonable expectancy of receiving the economic advantage. *Id.* Plaintiff here has alleged that he expected to receive a gift and that the gift depended on a vote of the executive board of the union. As such, the expectancy was conditional at best and certainly not reasonable under the alleged circumstances. Further, while we need not decide whether a retirement gift could ever satisfy the tort, it is highly doubtful, as by its very nature any "gift" is contingent on the whims of the giver. It is clear here that, as alleged, the gift was nothing more than a hoped-for benefit and not one that plaintiff could count on receiving had it not been for defendant's statements.

¶ 36    Further, the *Nemeth* case is consistent with this conclusion as opposed to supporting plaintiff's contention. In *Nemeth*, the court extended the tort of intentional interference with prospective economic advantage to an expectation of a bequest under a will. *Nemeth*, 99 Ill. App. 3d at 496-99. In doing so, however, the court emphasized that the expectancy had been "perfected" as opposed to being a "mere possibility" under the will. *Id.* at 499; see also *In re Estate of Hoover*, 160 Ill. App. 3d 964, 966 (1987). In the present case, unlike in *Nemeth* and *Hoover*, plaintiff alleged a mere possibility of receiving a retirement gift.

¶ 37    The fact that certain other retired employees received various gifts upon retirement does not alter this conclusion. Plaintiff does not allege that all prior retirees received retirement

-8-

gifts. While he argues that those prior situations reflected a formal policy of providing retirement gifts for all retirees such as himself, the allegations regarding prior retirees simply paint a picture of the *ad hoc* nature of such gifts. Further, even if such a policy existed, plaintiff has not alleged under what circumstances such gifts were given or what factors, if any, were considered by the executive board in giving them. If any policy is reflected by plaintiff's allegations, it is one of the executive board merely considering whether to provide a retirement gift. That is precisely what the executive board did in this case.

¶ 38 Because Illinois law has not extended the tort of intentional interference with prospective economic advantage to retirement gifts, and because this case does not present allegations upon which this court would extend the tort, the dismissal of count II was proper.

¶ 39                                    III. CONCLUSION

¶ 40 For the reasons stated, we affirm the dismissal with prejudice of plaintiff's amended complaint.

¶ 41 Affirmed.