2018 IL App (3d) 150864

Opinion filed March 12, 2018

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2018

| | | |
|---|---|---|
| PERFECT CHOICE EXTERIORS, LLC | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| Plaintiff-Appellant, | ) | Peoria County, Illinois, |
| | ) | |
| | ) | Appeal No. 3-15-0864 |
| v. | ) | Circuit No. 14-L-329 |
| | ) | |
| BETTER BUSINESS BUREAU OF | ) | Honorable |
| CENTRAL ILLINOIS, INC., an | ) | Katherine Gorman, |
| Illinois Corporation | ) | Judge, Presiding. |
| | ) | |
| Defendant-Appellee. | ) | |

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justice Schmidt concurred in the judgment and opinion.
Justice McDade dissented, with opinion.

**OPINION**

¶ 1      Plaintiff, Perfect Choice Exteriors, LLC (Perfect Choice), sued Defendant Better

Business Bureau of Central Illinois (BBB), alleging defamation, commercial disparagement,

tortious interference with contract, and violations of the Uniform Deceptive Trade Practices Act

(815 ILCS 510/2 (West 2014)). Each of the claims asserted by Perfect Choice was premised

upon allegations that BBB made defamatory statements by giving Perfect Choice a "D-" rating

on its website and by telling customers that Perfect Choice was not a good company and that

they should not do business with Perfect Choice. Perfect Choice sought monetary damages and an order requiring BBB to restore Perfect Choice's previous "A" rating and to remove all allegedly false and misleading information about Perfect Choice from its website.

¶ 2 BBB filed a motion to dismiss Perfect Choice's amended complaint pursuant to section 2-619 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619 (West 2014)), arguing that the allegedly defamatory statements at issue were opinions protected by the first amendment and were afforded a qualified privilege under Illinois law. The trial court granted BBB's motion and dismissed the complaint.

¶ 3 This appeal followed.

¶ 4                                                    FACTS

¶ 5 Perfect Choice is a home improvement company that has been in business in Creve Coeur, Illinois, since June 2009. Perfect Choice specializes in the installation of roofing, windows, and siding. BBB is an Illinois corporation that publishes and disseminates "reliability reports" that rate and assign grades to businesses in central Illinois, including Perfect Choice.

¶ 6 On December 16, 2014, Perfect Choice filed a four-count complaint against BBB, alleging defamation, commercial disparagement, tortious interference with contract, and violations of the Uniform Deceptive Trade Practices Act (815 ILCS 510/2 (West 2014)). BBB filed a combined motion to dismiss the complaint under sections 2-615 and 2-619 of the Code (735 ILCS 5/2-619.1 (West 2014)). The trial court dismissed the complaint without prejudice pursuant to section 2-615 of the Code, granted Perfect Choice leave to file an amended complaint, and reserved ruling on BBB's arguments for dismissal under section 2-619 of the Code.

¶ 7        Perfect Choice subsequently filed an amended complaint. The following factual recitation is taken from the allegations contained in Perfect Choice's amended complaint.

¶ 8        Since approximately August 2009, BBB has published and disseminated a reliability report regarding Perfect Choice and has posted this report on its website. BBB initially gave Perfect Choice an "A" rating in its published reliability report. However. BBB later changed that rating to a "D-." The reliability report stated that BBB relied upon several factors in determining Perfect Choice's rating, including the "complaint volume with the BBB for a business of [Perfect Choice's] size" and Perfect Choice's responses to and resolution of customer complaints.

¶ 9        In its amended complaint, Perfect Choice alleged that (1) Perfect Choice has always conducted its business in an ethical manner and responded to the consumer complaints filed with BBB; (2) Perfect Choice provided information to BBB showing that the allegations made by consumers about Perfect Choice were not "true and accurate, and, as such, should not [have been] included" in BBB's reliability report; and (3) nevertheless, BBB did not make any changes to the report and continued to publish and distribute "false and defamatory" statements about Perfect Choice until Perfect Choice filed the instant lawsuit. Perfect Choice also alleged "on information and belief," that BBB never conducted a "material investigation *** to determine the validity" of the consumer complaints against Perfect Choice filed with BBB.

¶ 10        BBB also alleged, "upon information and belief," that BBB treated companies that were "paid members of the BBB" more favorably than companies that were not paid members of the BBB, like Perfect Choice. As an example of such unfair treatment, Perfect Choice cited BBB's rating of BetterWay Siding and Windows, Inc. (BetterWay), another siding and window company doing business in the Peoria area and one of Perfect Choice's competitors. BetterWay is a paid member of the BBB. BBB gave BetterWay an "A+" rating even though BetterWay had

3

15 customer complaints during the 3 years before Perfect Choice filed its complaint, 9 of which had occurred during the preceding 12 months. BBB's reliability report on BetterWay noted that BetterWay had made a good faith effort to resolve three of the complaints lodged against it. By contrast, Perfect Choice (which is not a paid member of the BBB or a BBB accredited business) had 28 customer complaints during the 3 years before it filed its amended complaint, only 3 of which had occurred during the past 12 months. Thus, BBB assigned BetterWay a substantially higher grade than Perfect Choice even though Perfect Choice had been in business longer and had fewer complaints during the preceding 12 months. Moreover, Perfect Choice alleged that, when it made a good faith attempt to resolve a complaint raised by a customer, BBB's reliability report merely noted that the issue was "disputed" or "administratively closed" without also noting that Perfect Choice had made a good faith effort to resolve it.

¶ 11 Perfect Choice further alleged "upon information and belief" that, even after the filing of the instant lawsuit, when existing or potential customers called BBB to inquire about Perfect Choice, BBB informed the customers that Perfect Choice was "not a good company" and that they "should not do business with" Perfect Choice.

¶ 12 Perfect Choice alleged that BBB made each of the above-referenced defamatory statements about Perfect Choice intentionally and maliciously or in reckless disregard as to whether such statements applied to Perfect Choice.

¶ 13 Perfect Choice further alleged, "upon information and belief," that BBB (1) did not follow its own internal standards in issuing its reliability report on Perfect Choice; (2) applied "arbitrary and discriminatory" standards in reviewing Perfect Choice's business record, which were different from the standards BBB used in reviewing the business records of certain other

companies; and/or (3) "did not act impartially and in good faith and did not review and carefully evaluate all available information in making its statements concerning [Perfect Choice]."

¶ 14    Perfect Choice alleged that, as a result of BBB's defamatory statements, Perfect Choice "has had customers cancel contracts and/or refuse to enter into contracts with Perfect Choice," resulting in a loss exceeding $50,000. Perfect Choice also alleged that it had "suffered injury to its reputation and standing within the business community in an amount exceeding $50,000." Perfect Choice sought compensatory damages for loss of business and for injury to its reputation and standing in the business community, plus punitive damages. It also asked the trial court to enter an order requiring BBB to "immediately remove all false and misleading information from its Reliability Report regarding Perfect Choice" and to "restore an 'A' rating" to Perfect Choice.

¶ 15    BBB subsequently filed a motion to dismiss Perfect Choice's amended complaint pursuant to section 2-619 of the Code (735 ILCS 5/2-619 (West 2014)), arguing that the allegedly defamatory statements at issue were opinions protected by the first amendment and were afforded a qualified privilege under Illinois Law. In support of its motion, BBB attached a copy of pamphlet titled "BBB Ratings System Overview" (the Overview pamphlet) and a copy of BBB's "Overview of BBB Grade" webpage. These documents were authenticated by an affidavit submitted by Jessica Tharp, BBB's vice president. In her affidavit, Tharp swore that BBB provided the Overview pamphlet to members of the public upon request and that the "Overview of BBB Grade" webpage could be accessed through BBB's website as it existed in December 2014. The Overview pamphlet states that the BBB rating "is a grade based on a proprietary formula that uses information known to BBB and incorporates BBB experience with the business." According to the Overview pamphlet, BBB's proprietary formula evaluates numerous categories of information and "reflects BBB opinion as to the relative importance of

5

each category." The pamphlet provides that BBB's rating "represents BBB's degree of confidence the business is operating in a trustworthy manner and will make a good faith effort to resolve any customer complaints filed with BBB." The pamphlet lists and explains each category of information that the BBB relies upon in determining a business's grade, including "type of business," "time in business," "complaint volume," "serious complaints," "unresolved complaints," "unanswered complaints," "complaint analysis," "government action," "advertising review," and seven other categories of information.

¶ 16    Similarly, BBB's "Overview of BBB Grade" webpage states that BBB's letter grades "represent the BBB's opinion of the business," which is based on "BBB file information about the business," including the number of complaints filed against the business with the BBB, the seriousness of such complaints, whether the business has a history of resolving such complaints satisfactorily in a timely manner, the type of business involved, the length of time the business has been operating, licensing and government actions taken against the business, advertising issues, and other factors. The webpage notes that BBB grades are not a guarantee of a business's reliability or performance and recommends that consumers "consider a business' grade in addition to all other available information about the business."

¶ 17    The trial court issued a written order, granting BBB's motion to dismiss Perfect Choice's amended complaint pursuant to section 2-619 of the Code. The trial court's order noted that each of the four causes of action pleaded by Perfect Choice was premised upon the allegation that BBB "made defamatory statements about [Perfect Choice] by assigning it an improper grade." The trial court rejected this allegation for two reasons. First, the trial court ruled that BBB's ratings were "opinions" that were protected by the first amendment. In reaching this conclusion, the trial court expressly relied upon the United States Supreme Court's decision in *Milkovich v.*

6

*Lorain Journal Co.*, 497 U.S. 1 (1990), and its progeny. Second, the trial court held that BBB's ratings "enjoy[ed] a qualified privilege" as recognized in *Kuwik v. Starmark Star Marketing & Administration, Inc.*, 156 Ill. 2d 16 (1993), and other Illinois court decisions because (1) the ratings are made in "situations in which a recognized interest of the public is concerned" and (2) Perfect Choice had "failed to plead facts that take this matter within a bad faith exception" to the qualified privilege.

¶ 18    This appeal followed.

¶ 19                                    ANALYSIS

¶ 20    Each of the legal claims asserted in Perfect Choice's amended complaint are premised on the allegations that BBB defamed Perfect Choice by (1) assigning Perfect Choice a grade of "D-" in its published reliability report regarding Perfect Choice and (2) telling existing and potential customers who called BBB inquiring about Perfect Choice that Perfect Choice was "not a good company" and that the customers should not do business with Perfect Choice. Perfect Choice argues that the trial court erred in granting BBB's motion to dismiss under section 2-619 because these statements were neither opinions protected under the first amendment nor statements protected by a qualified privilege.

¶ 21    A section 2-619 motion to dismiss admits the sufficiency of the complaint, but asserts a defense outside the complaint that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31. When ruling on such motions, a court must accept as true all well-pleaded facts, as well as any reasonable inferences that may arise from such facts. *Id.* All pleadings and supporting documents must be construed in the light most favorable to the nonmoving party. *DeSmet v. County of Rock Island*, 219 Ill. 2d 497, 504 (2006). We review a trial court's dismissal

under section 2-619 is *de novo*. *Patrick Engineering*, 2012 IL 113148, ¶ 31; *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579 (2006).

¶ 22        To state a legally cognizable claim for defamation, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages. *Solaia Technology*, 221 Ill. 2d at 579. A defamatory statement is a statement that harms a person's reputation to the extent it lowers the person in the eyes of the community or deters the community from associating with her or him. *Id.* A statement is defamatory *per se* if its harm is obvious and apparent on its face. *Id.* In Illinois, there are five categories of statements that are considered defamatory *per se*: (1) words that impute a person has committed a crime, (2) words that impute a person is infected with a loathsome communicable disease, (3) words that impute a person is unable to perform or lacks integrity in performing her or his employment duties, (4) words that impute a person lacks ability or otherwise prejudices that person in her or his profession, and (5) words that impute a person has engaged in adultery or fornication. *Id.* at 579-80; see also *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998); *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 88-89 (1996). A statement that is defamatory *per se* is not actionable if it is reasonably capable of an innocent construction. *Solaia Technology*, 221 Ill. 2d at 580.

¶ 23        Moreover, even if a statement is defamatory *per se* and not subject to an innocent construction, the statement may enjoy constitutional protection under the first amendment if it is the expression of an opinion that does not state or imply an assertion of fact which is provably false. *Milkovich*, 497 U.S. at 19-22; *Solaia Technology*, 221 Ill. 2d at 581. "[T]here is no artificial distinction between opinion and fact" because "a false assertion of fact can be

defamatory even when couched within apparent opinion or rhetorical hyperbole." *Solaia Technology*, 221 Ill. 2d at 581; see also *Dubinsky v. United Airlines Master Executive Council*, 303 Ill. App. 3d 317, 324 (1999) ("expressions of opinion may often imply an assertion of objective fact and, in such cases, would be considered actionable"); *Milkovich*, 497 U.S. at 18-19, 21; *Bryson*, 174 Ill. 2d at 99-100. However, a defamatory statement is constitutionally protected if it "cannot be reasonably interpreted as stating actual fact." *Solaia Technology*, 221 Ill. 2d at 581. In other words, a statement is constitutionally protected if does not contain an assertion that is "sufficiently factual to be susceptible to being proven true or false." *Bryson*, 174 Ill. 2d at 100.

¶ 24    These first amendment protections apply where the defamation claim is brought by a public official or a public figure, or where the claim is brought by a private individual against a media defendant. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 399 (2008). Our supreme court has yet to determine whether these constitutional protections also apply where, as here, a private party has allegedly defamed another private party on a matter of public or private concern. *Id.*; see also *Stone v. Paddock Publications, Inc.*, 2011 IL App (1st) 093386, ¶ 27; *Missner v. Clifford*, 393 Ill. App. 3d 751, 769 (2009). However, in *Imperial Apparel*, our supreme court identified several benefits of extending the constitutional privilege to private defendants, including (1) achieving consistent outcomes where a plaintiff seeks recovery from both a media defendant and private individuals based on the same communication and (2) reducing ambiguity as to whether a particular communication is actionable, thereby minimizing fear of liability and self-censorship that would "chill the free flow of protected expression." *Imperial Apparel*, 227 Ill. 2d at 400. Our supreme court also reasoned that extending constitutional protection to private defendants "recognizes that the inherent worth of speech in

9

terms of its capacity for informing the public is not dependent on the status of the defendant who publishes it." *Id.*

¶ 25 Like the First District in *Stone*, we find these considerations persuasive. See *Stone*, 2011 IL App (1st) 093386, ¶ 28. Following *Stone*, we hold that the first amendment privilege applies to allegedly defamatory communications made by private defendants where the standards prescribed in *Milkovich* and *Solaia Technology, LLC* are met.[1]

¶ 26 As noted, the test for determining whether a statement is protected from defamation claims under the first amendment is whether it can reasonably be interpreted as stating actual fact. *Imperial Apparel*, 227 Ill. 2d at 398. In applying this test, we are guided by several criteria: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content. *Id.*; see also *Solaia Technology*, 221 Ill. 2d at 581; *Mittelman*, 135 Ill. 2d at 243; *Pompa v. Swanson*, 2013 IL App (2d) 120911, ¶ 22. The statement is evaluated from the perspective of an ordinary reader. *Imperial Apparel*, 227 Ill. 2d at 398. Whether or not a statement is a factual assertion that could give rise to a defamation claim is a question of law for the court. *Id.*

¶ 27 As noted, Perfect Choice claims that BBB defamed Perfect Choice by (1) improperly assigning Perfect Choice a "D-" grade in its published reliability report and (2) telling existing

---

[1]In several published decisions, our appellate court has assumed, without deciding, that the first amendment privilege applies to statements made by a private defendant. See, *e.g.*, *Tunca v. Painter*, 2012 IL App (1st) 093384; *J. Maki Construction Co. v. Chicago Regional Council of Carpenters*, 379 Ill. App. 3d 189 (2008); *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443 (2000); *Doherty v. Kahn*, 289 Ill. App. 3d 544 (1997). Our supreme court made the same assumption in *Mittelman v. Witous*, 135 Ill. 2d 220 (1989), but that case was decided before the United States Supreme Court's decision in *Milkovich*. In the instant case, the trial court assumed that first amendment protections would apply to the allegedly defamatory communications at issue if those statements contained no verifiable statements of fact. *Imperial Apparel*, 227 Ill. 2d at 400. Neither party has challenged that assumption either before the trial court or on appeal. In fact, Perfect Choice expressly conceded that point in its reply brief.

10

and potential customers who called BBB inquiring about Perfect Choice that Perfect Choice was "not a good company" and that the customers should not do business with Perfect Choice. Both of these statements were pure expressions of opinion, and neither statement contained or implied a verifiable or provably false statement of fact. The grade that the BBB assigned to Perfect Choice was merely BBB's subjective evaluation of Perfect Choice's business practices. BBB's website explicitly notes that the letter grades the BBB assigns to businesses "represent the BBB's opinion of the business." Similarly, the overview pamphlet states that the BBB's ratings reflect BBB's "degree of confidence" that a business is operating in a trustworthy manner and will make a good faith effort to resolve any customer complaints filed with BBB. Although both the website and the pamphlet suggest that BBB's rating is based upon various categories of information about the business (including complaint volume and the business's history of responding to complaints), the Overview pamphlet notes that the grade ultimately assigned by the BBB is based upon a "proprietary formula" that "reflects BBB opinion as to the relative importance of each category." Thus, as the BBB's website and overview pamphlet make clear, the BBB's assignment of letter grade is a subjective assessment based upon subjective criteria and the subjective interpretation of data; it is not a statement of fact that may be proven true or false. In sum, the BBB's letter grade is an *evaluative judgment*, not a verifiable factual statement. Neither the nature of the information provided nor the language used on BBB's website or in its overview pamphlet would lead a reasonable person to believe that the BBB's ratings were statements of fact, as opposed to opinions. For this reason, courts in other jurisdictions have repeatedly held that ratings assigned by the BBB or by other entities are opinions protected by the first amendment.[2]

---

[2]See, *e.g.*, *Castle Rock Remodeling, LLC v. Better Business Bureau of Greater St. Louis, Inc.*, 354

¶ 28      In its brief on appeal, Perfect Choice argues that the grade BBB assigned to Perfect Choice is not a constitutionally protected "subjective" opinion because BBB purports to provide "objective, unbiased information on businesses" and "holds itself out as the authority on objective ratings of area businesses." Perfect Choice provides no citation to the record in support of these assertions. Moreover, in its reply brief, Perfect Choice expressly abandoned the argument that BBB's letter grade could form the basis of a defamation claim.[3] In any event, the argument fails. Even if Perfect Choice purported to offer an "unbiased" opinion that was based in part on certain objectively verifiable facts, BBB made clear that its rating was a subjective evaluation based upon the application of subjective criteria and a subjective interpretation of the facts. Thus, BBB's rating of Perfect Choice was a constitutionally protected opinion, not a verifiable statement of fact that support a claim for defamation. *Aviation Charter*, 416 F.3d at 868-71; *Castle Rock Remodeling*, 354 S.W.3d at 242-43; *Browne*, 525 F. Supp. 2d at 1251-53; *Better Business Bureau of Metropolitan Houston*, 441 S.W.3d at 357. "Although one may

_____

S.W.3d 234, 242-43 (Mo. Ct. App. 2011) (holding that the Better Business Bureau of Greater St. Louis's "C-" rating of the defendant was a constitutionally protected opinion because it was "based on an evaluating process and subjective opinion" and was "not sufficiently factual to be susceptible of being proved true of false" and because "neither the nature of the information provided nor the language used on BBB's website would lead a reasonable person to believe that the rating [was] a statement of actual fact" (internal quotation marks omitted)); *Better Business Bureau of Metropolitan Houston, Inc. v. John Moore Services, Inc.*, 441 S.W.3d 345, 357 (Tex. Ct. App. 2013) (holding that the Houston Better Business Bureau's "F" rating of the defendant "cannot be defamatory because it [was] the Bureau's self-described 'opinion' of the quality of [the defendant's] services, which lacks a high degree of verifiability"); *Browne v. Avvo, Inc.*, 525 F. Supp. 2d 1249, 1251-53 (W.D. Wa. 2007) (holding that defendant's comparative ratings of attorneys on its website were opinions protected by the first amendment where, *inter alia*, "the underlying data [was] weighted based on [the defendant's] subjective opinions regarding the relative importance of various attributes" and the ratings themselves could not be proven true or false); *Aviation Charter, Inc. v. Aviation Research Group/US*, 416 F.3d 864, 868-71 (8th Cir. 2005) (holding that defendant's publication of safety ratings for air charter service providers were protected under the first amendment and could not constitute actionable defamation, even though the ratings relied on objectively verifiable data, because the defendant's interpretation of that data in its safety rating was ultimately a subjective assessment and not an objectively verifiable fact).

[3]In its reply brief, Perfect Choice conceded that "if [Perfect Choice] were complaining solely about a rating given to it by the BBB, *** the trial court would have been correct in finding that it was an opinion and not actionable."

12

disagree with BBB's evaluation of the underlying objective facts, the rating itself cannot be proved true or false." *Castle Rock Remodeling*, 354 S.W.3d at 243; see also *Browne*, 525 F. Supp. 2d at 1252.

¶ 29    The dissent contends that the "D-" grade that BBB assigned to Perfect Choice is not a constitutionally protected opinion because (1) it amounted to an assertion that Perfect Choice's performance was "unsatisfactory" and "significantly deficient" and (2) this assertion implied the existence of facts about Perfect Choice's performance that are capable of being proven true or false. We disagree. A general opinion that someone's job performance is "unsatisfactory" is not actionable absent some express or clearly implied reference to particular facts that purportedly support the opinion, such as performance reviews or other "specific factual criteria" used to measure the claimant's job performance. *Pompa*, 2013 IL App (2d) 120911, ¶¶ 23-24. Absent such a reference, an opinion about a person's job performance does not imply the existence of any *specific* statement of fact that can be objectively verified. *Id.* Here, the letter grade BBB assigned to Perfect Choice did not purport to be based on any specific, objectively verifiable fact (*e.g.*, the alleged fact that Perfect Choice had more customer complaints than the average home improvement business). Rather, BBB made clear that it assigned the grade based upon its undisclosed formula and its subjective weighing and interpretation of various facts (including the volume of customer complaints and a number of other factors). As noted above, a grade or a rating is constitutionally protected, even if it purports to be based on a consideration of objectively verifiable facts or data, if the grade or rating results from a subjective interpretation of the facts or from the application of undisclosed, subjective criteria to the data. *Aviation Charter, Inc.*, 416 F.3d at 868-71; see also *Browne*, 525 F. Supp. 2d at 1251-53. That is exactly what happened here. Although the *underlying data* BBB considered in assigning the grade might

13

be objectively verifiable, the *grade itself* (and the evaluative process that produced it) is not. See

*Better Business Bureau of Metropolitan Houston, Inc.*, 441 S.W.3d at 357; *Castle Rock*

*Remodeling, LLC*, 354 S.W.3d at 242-43; *Browne*, 525 F. Supp. 2d at 1251-53. Put another way,

the fact that BBB relied on objectively verifiable data in assessing Perfect Choice's performance

does not mean that the letter grade expressed or implied any particular, objectively verifiable

factual statement about Perfect Choice's performance. That is probably why Perfect Choice has

expressly abandoned the argument that BBB's letter grade could form the basis of a defamation

claim. See *supra* ¶ 28 & n.3.

¶ 30      The statements that BBB allegedly made to existing and prospective customers who

inquired about Perfect Choice were also constitutionally protected statements of opinion.[4]

Perfect Choice alleged that, when existing or potential customers called BBB to inquire about

Perfect Choice, BBB informed the customers that Perfect Choice was "not a good company" and

that the customers "should not do business with" Perfect Choice. These are vague, generalized

statements of opinion that do not state or imply any specific assertions of fact. Perfect Choice

does not allege that BBB informed inquiring customers of any factual basis for its alleged

opinions or of the criteria BBB used in evaluating Perfect Choice's business. Perfect Choice

merely alleges that BBB made the bald statement that Perfect Choice was not a "good" company.

As noted above, such vague, unsupported expressions of opinion are not actionable. See, *e.g.*,

*Pompa*, 2013 IL App (2d) 120911, ¶¶ 23-24 (holding that defendant's alleged statement that the

plaintiff "performed his job unsatisfactorily" was not actionable because, absent reference to

---

[4]The trial court did not specifically address these alleged statements in its order. However, this court is not bound by the trial court's reasoning and may affirm on any basis supported by the record, regardless of whether the trial court based its decision on that basis. *Mutual Management Services, Inc. v. Swalve*, 2011 IL App (2d) 100778, ¶ 11; see also *Kubichek v. Traina*, 2013 IL App (3d) 110157, ¶ 28 n.3 ("we review the trial court's judgment, not its rationale, and we may affirm on any basis that the record supports"); *People v. Reed*, 361 Ill. App. 3d 995, 1000 (2005).

performance reviews or other "specific factual criteria" for measuring the claimant's job performance, the statement was "merely a vague, if not generalized" opinion that was unverifiable); *Wynne*, 318 Ill. App. 3d at 452 (ruling that "the vaguer and more generalized the opinion, the more likely the opinion is nonactionable as a matter of law").

¶ 31        Illinois courts have held a statement of opinion to constitute actionable defamation only where the speaker states or clearly implies a verifiable factual basis for the opinion or the opinion is otherwise capable of being objectively verified. See, *e.g.*, *Bryson*, 174 Ill. 2d at 100 (implicit characterization of the plaintiff as a "slut" in a published story was not a constitutionally protection opinion because it contained a "provably false factual assertion" that the plaintiff was sexually promiscuous); *Solaia Technology*, 221 Ill. 2d at 583-84 (statement in magazine that the plaintiff held an "essentially worthless patent" that the plaintiff used solely to extract settlements by filing unwarranted patent infringement claims was actionable); *Tunca*, 2012 IL App (1st) 093384, ¶ 47 (defendant's alleged suggestion that the plaintiff doctor committed medical malpractice when he severed a patient's artery during surgery was not a constitutionally protected opinion because it contained a verifiable factual statement, *i.e.*, that the plaintiff had severed a patient's artery during surgery); see also *Milkovich*, 497 U.S. at 21-22 (ruling that newspaper story's suggestion that the plaintiff had perjured himself in a judicial proceeding was not a constitutionally protected opinion because it was "an articulation of an objectively verifiable event" that was "sufficiently *** susceptible of being proved true or false" and was not merely a "subjective assertion" (internal quotation marks omitted)). Unsupported, vague, and unverifiable expressions of opinion like the alleged statements at issue here do not meet that standard.

¶ 32     In addition to its claim for defamation, Perfect Choice also asserted claims for commercial disparagement, tortious interference with contract, and violations of the Uniform Deceptive Trade Practices Act. However, as Perfect Choice admits, each of these claims are based on the allegedly defamatory statements by BBB identified in Perfect Choice's amended complaint. Because each of those statements are constitutionally protected expressions of opinion, all of Perfect Choice's other claims based on those statements fail as a matter of law. *Imperial Apparel*, 227 Ill. 2d at 402 ("a determination that language is not actionable under the first amendment not only is fatal to plaintiffs' defamation claims, it precludes [plaintiffs] from obtaining recovery under any of the other common law and statutory claims they asserted in their complaint").[5]

¶ 33     Because we hold that the alleged statements at issue in this appeal are constitutionally protected expressions of opinion, we need not address BBB's alternative argument that its ratings and communications to the public were protected by a qualified privilege. Nor need we address any of the other arguments raised by the parties.

¶ 34                                   CONCLUSION

¶ 35     The judgment of the circuit court of Peoria County dismissing Perfect Choice's complaint is affirmed.

¶ 36     Affirmed.

¶ 37     JUSTICE McDADE, dissenting.

¶ 38     The majority affirms the circuit court's dismissal of the defamation claim asserted by Perfect Choice on the single basis that the negative rating assigned by the Better Business Bureau (BBB) was pure opinion protected by the first amendment to the United States

---

[5]Perfect Choice correctly concedes in its reply brief that, if its defamation claims fail, the remaining counts asserted in its amended complaint "fail as well."

16

Constitution. In reaching this decision, the majority assumes the first amendment applies to two non-governmental, non-media parties. Solely for purposes of this argument in this appeal, I, too, accept that assumption. My dissent, therefore, challenges only the finding that the rating is nothing more than an opinion.

¶ 39     The majority decision allows BBB, figuratively, to have its cake and eat it too or to win on both heads and tails of a coin toss. As shown in its Ratings System Overview pamphlet and its Ratings Overview website (*supra* ¶¶ 15-16), BBB first secures its clientele with assurances that it can provide well-grounded, fact-based assessments of these local businesses because it compiles factual information about each company in numerous categories and utilizes a proprietary formula to translate that information into a rating on which the public can rely when deciding whether or not to do business with a particular company. That translation of information to rating is the foundation of BBB's business model and a major reason for its continued successful existence as an evaluative agency.

¶ 40     But then, when an aggrieved company challenges a negative rating as injurious to its reputation and its continued ability to carry on its business, the BBB asks the courts to ignore all of its vaunted factual underpinning and hold that the rating is nothing more than an ungrounded opinion pulled out of thin air.

¶ 41     Perfect Choice complains that BBB gave it a D- (D minus) rating. Even if one does not fully understand how that grade is reached, it is virtually universally understood that a D minus denotes *performance* that is less than mediocre and verging on failure. When a teacher, for example, gives a D minus grade, it implies that a student's test scores, homework assignments, and classroom participation are unsatisfactory and provide support for the low grade. Those are facts capable of being proven or disproven. In the same way, a D minus rating for Perfect Choice

17

implies that specific identifiable elements of its performance are significantly deficient. Moreover, the statement "D minus" is defamatory *per se* because it imputes that Perfect Choice lacks the ability or willingness to carry out its business functions and prejudices it in its profession. See *Solaia Technology, LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 579-80 (2006).

¶ 42        Similarly, that Perfect Choice had previously held an A rating that has now been reduced to a D minus asserts, again based on BBB's accumulated and updated information, that its previously superior performance has devolved to business conduct that is now profoundly unsatisfactory. That, too, implies the existence of provable/unprovable fact.

¶ 43        Finally, BBB has *expressly* declared in its pamphlet and on its website that its rating is based on factual information about Perfect Choice in numerous categories, which it has amassed and filtered through its proprietary formula to reach the stated grade. The D minus rating is an expression of opinion that states or implies a foundational assertion of fact which is capable of being proven false.

¶ 44        That this is the proper standard for determining whether a statement claimed by the person uttering or publishing it is opinion is insulated by the first amendment is clearly established by precedent. In *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), Chief Justice Rehnquist, writing for the majority, initially confirmed that there is no separate constitutional "opinion" privilege that limits the application of state defamation law. He then turned to the Lorain Journal's reliance on the following *dictum* from the court's earlier decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974):

> "Under the First Amendment there is no such thing as a false idea.
> However pernicious an opinion may seem, we depend for its

18

correction not on the conscience of judges and juries but on the competition of other ideas. But there is no constitutional value in false statements of fact." *Id.* at 339-40.

¶ 45 After observing that "the fair meaning of the passage is to equate the word 'opinion' in the second sentence with the word 'idea' in the first sentence" (*Milkovich*, 497 U.S. at 18), Justice Rehnquist reasoned that the language merely echoed the concept of natural correction in the "marketplace of ideas." (Internal quotation marks omitted.) *Id.* " '[T]he best test of truth is the power of the thought to get itself accepted in the competition of the market.' " *Id.* (quoting *Abrams v. United States*, 250 U.S. 616, 630 (1919) (Holmes, J., dissenting)). Based on this analysis, Justice Rehnquist concluded:

> "Thus, we do not think this passage from *Gertz* was intended to create a wholesale defamation exemption for anything that might be labeled 'opinion.' [Citation.] Not only would such an interpretation be contrary to the tenor and context of the passage, but it would also ignore the fact that expressions of 'opinion' may often imply an assertion of objective fact." *Id.*

¶ 46 By way of example, Justice Rehnquist noted: "Simply couching such statements in terms of opinion does not dispel these implications; and the statement, 'In my opinion Jones is a liar,' can cause as much damage to reputation as the statement, 'Jones is a liar.' " *Milkovich*, 497 U.S. at 19. *Milkovich* further states that the first amendment's vital guarantee of free and uninhibited discussion of public issues must be balanced with the important social values that underlie defamation law and society's pervasive and strong interest in preventing and redressing attacks upon reputation. *Id.* at 22-23.

19

¶ 47    In *Solaia Technology*, 221 Ill. 2d at 581, the Illinois Supreme Court reiterated *Milkovich*'s explanation of protected opinion, saying, "there is no artificial distinction between opinion and fact: a false assertion of fact can be defamatory even when couched within apparent opinion or rhetorical hyperbole." The court stated that "[t]he plaintiffs focus upon the statement that the '318 patent was 'essentially worthless' and being used to generate settlement proceeds. The appellate court held that this statement falls within the bounds of constitutionally protected opinion. Again, we disagree with the appellate court." *Id.* at 584. The court then discussed the content of the letter—which I freely acknowledge is more informative than the D minus rating at issue in this case—and observed that "*the letter not only places a value on the patent, but bases this value on an informed reading of the patent by the industry veteran.*" (Emphasis added.) *Id.* After describing the meat of the challenged statements, the court concluded:

> "The letter undoubtedly employs hyperbole, but this statement is not an opinion. Under its metaphorical chaff hides a kernel of fact: Solaia Technology secured a worthless patent and filed infringement claims with the sole aim of extracting settlements." *Id.*

¶ 48    Similarly, under the bare D minus rating assessed by BBB lies the following kernels of fact: we (BBB) are industrial veterans with a long history of providing ratings of local businesses on which ratings the public can rely because they are based on multiple categories of information about that company's business practices, which are subjected to a reliable proprietary formula for analysis that translates the information into a rating. Using that information and that proprietary formula, we conclude that Perfect Choice is performing its business at a level so unsatisfactory as to border on complete failure.

¶ 49     This dissent does not suggest that Perfect Choice would prevail on its defamation claims. BBB may be protected by a qualified privilege, as it claims. Perfect Choice's action may be defeated by truth, which is always a defense to alleged defamatory statements. Or there may be other viable defenses to the claim. What this dissent does assert is that Perfect Choice has adequately alleged facts, couched as opinion, to survive a motion to dismiss. For that reason, the trial court's dismissal must be reversed.