NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2021 IL App (4th) 200589-U

NO. 4-20-0589

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
August 17, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| MICHAEL HUTSON, Individually and as Father and Next Friend of J.H., a Minor, | ) ) | Appeal from the Circuit Court of |
|     Plaintiff-Appellant, | ) | McLean County |
|     v. | ) | No. 20L35 |
| MATTHEW PATE, Individually and as Father and Next Friend of M.P., a Minor, | ) ) ) | Honorable |
|     Defendant-Appellee. | ) ) | Rebecca S. Foley, Judge Presiding. |

JUSTICE STEIGMANN delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1     *Held:*     The appellate court affirmed the trial court's dismissal of plaintiff's defamation claims because the statement at issue was an opinion that did not assert or imply any facts that were provably false.

¶ 2     This appeal arises out of the trial court's July 2020 dismissal of claims of defamation by plaintiff, Michael Hutson, against defendant, Matthew Pate. The trial court granted defendant's motion to dismiss, concluding that the statement at issue was protected speech under the first amendment because (1) Hutson could not prove that the statement was false and (2) the statement was "clearly in the Court's view subjective opinion ***."

¶ 3     Hutson appeals, arguing (1) the trial court erroneously determined the email was opinion that did not assert or imply any facts that were provably false, (2) Pate's statement was false, (3) the trial court made "a finding that contradicts verified facts," and (4) the trial court should have allowed discovery. We disagree and affirm.

## I. BACKGROUND

### A. The Complaint

¶ 6　　　In March 2020, plaintiff, Michael Hutson, filed a complaint on behalf of his daughter, J.H., in which he alleged one count of negligence against M.P. and two counts of defamation against Matthew Pate, M.P.'s father.

¶ 7　　　Regarding negligence, the complaint alleged that J.H. was visiting M.P. at M.P.'s residence and M.P. began watering plants on the property. At one point, M.P. yanked on the hose in a manner that caused the hose to sweep J.H.'s feet out from under her, causing her to fall and fracture her tibial plafond—essentially, a fracture near her ankle.

¶ 8　　　Regarding defamation, the complaint alleged that following this incident and Hutson's subsequent request to his insurance company for coverage, Pate sent a message to a general comment email address at Berkshire Hathaway (a conglomerate which in part conducts real estate brokerage business) which stated the following:

> "Hello,
>
> I would like to ask to be removed from any mailing lists owned by your company or agents. This includes email, sales, Christmas cards, time changes, etc. Due to a personal issue with one of your agents, Mike Hutson, we will no longer be dealing with Berkshire. It is my opinion that his pursuit for financial gain at the expense of friends and neighbors makes him, as well as anyone he represents, person[s] with whom we choose not to interact or be exposed to.
>
> Thanks for your understanding.
>
> Matt Pate"

¶ 9　　　The complaint noted that Hutson formerly worked with Berkshire Hathaway and,

at the time of the filing of the complaint, worked for its competitor, Coldwell Banker. The complaint alleged that Pate's email (1) was "distributed within the Berkshire Hathaway company and to others," (2) "was false and defamatory *per se* in that it imputed misconduct and a want of integrity by [Hutson], both personally and in his employment," and (3) "portrayed [Hutson] in a false and misleading light to [Hutson's] peers, competitors, and others."

¶ 10                                B. The Motion To Dismiss

¶ 11        In May 2020, Pate filed a motion to dismiss the defamation counts pursuant to section 2-619(a)(9) of the Code of Civil Procedure. 735 ILCS 5/2-619(a)(9) (West 2018). In that motion, Pate noted that he requested to be removed from the mailing list because "Pate received a Christmas card from Berkshire Hathaway whom Pate understood to be Hutson's employer ***." Pate explained that the email "was nothing more than the expression of an opinion of Hutson's motivation and an explanation as to why [Pate] chose not to receive Christmas cards and other communications from whom he believed to be Hutson's employer."

¶ 12        Pate argued that the email was protected speech under the first amendment because it was "an expression of an opinion that does not state or imply an assertion of fact which is provably false."

¶ 13                                C. The Hearing

¶ 14        In July 2020, the trial court conducted a hearing on Pate's motion to dismiss. At that hearing, Pate argued that the email was protected opinion.

¶ 15        Pate also argued that there was no way Hutson could establish that what Pate said was a provably false statement of fact. Pate noted that the claim that Hutson was seeking financial gain was true because (1) Hutson had pursued the lawsuit against M.P. and (2) if he won the lawsuit, J.H. would receive "a windfall of several hundred thousand dollars at a young age that

- 3 -

\*\*\* will benefit her parents, including Mr. Hutson." Additionally, Pate argued that the portion of the statement regarding the financial gain being at the expense of friends and neighbors was true because even if Pate would not be financially responsible for any ultimate payout to Hutson or J.H., his expense was in the form of (1) stress about having to be a part of the lawsuit and (2) the souring relationship between Pate and Hutson.

¶ 16 Hutson countered that (1) neither he nor J.H. would receive any kind of windfall through the lawsuit and (2) they were only seeking compensation for "her loss of a normal life, pain and suffering and medical expenses." Hutson also argued that no financial gain would be at Pate's expense because it would be paid by insurance.

¶ 17 In reply, Pate argued that it was irrelevant whether (1) it was a windfall or mere compensation and (2) the money would go to Hutson or J.H. Pate argued that the important thing was that the lawsuit sought financial gain. Pate also argued that "[Pate] simply disclosed his opinion based on information he had available to him."

¶ 18 The trial court noted that "even if a statement is defamatory *per se* and not subject to an innocent construction, the statement may enjoy constitutional protection under the First Amendment if it is the expression of an opinion that does not state or imply an assertion of fact which is provably false \*\*\*." In making its determination, the court said it applied the following criteria: "One, whether the statement has a precise and readily understood meaning. Two, whether the statement is verifiable, and three, whether the statements literary or social context signals that it is factual content."

¶ 19 The trial court further noted that merely prefacing the statement with "in my opinion" did not make the statement protected opinion for the purposes of the first amendment. The court also determined that the added context of the lawsuit "is not referenced anywhere in this

speech. An ordinary reader in the Court's view has no idea what financial gain that the speaker is speaking of." Ultimately, the court decided that (1) Hutson could not prove that the "pursuit of financial gain" statement was false and (2) the "expense of friends and neighbors" statement was "clearly in the Court's view *** subjective opinion."

¶ 20         The trial court granted Pate's motion to dismiss with prejudice.

¶ 21         This appeal followed.

¶ 22                                    II. ANALYSIS

¶ 23         Hutson appeals, arguing (1) the trial court erroneously determined the email was opinion that did not assert or imply any facts that were provably false, (2) Pate's statement was false, (3) the trial court made "a finding that contradicts verified facts," and (4) the trial court should have allowed discovery. We disagree and affirm.

¶ 24         Because we conclude that the trial court correctly determined that the email was an opinion that did not assert or imply any facts that were provably false, we need not address Hutson's second or third claims.

¶ 25         Further, we need not address Hutson's fourth claim because, upon the court's dismissal of his complaint, he failed to ask for leave to file an amended complaint. A valid complaint of some kind is a prerequisite to discovery. Without an existing valid complaint, no grounds exist for discovery to proceed based on the defamation claims. In this regard, we note that Hutson argues that the trial court erred when it "dismissed plaintiff's two defamation counts with prejudice and without leave to amend." However, the record reveals that Hutson never requested leave to amend at the hearing, nor did he file any motion within 30 days following that hearing (1) to reconsider or (2) for leave to file an amended complaint. Under these circumstances, the trial court properly concluded that Hutson's motion to compel discovery was moot.

¶ 26                                      A. The Law

¶ 27        A section 2-619 motion to dismiss admits the sufficiency of the complaint but asserts a defense outside the complaint that defeats it. *Patrick Engineering, Inc. v. City of Naperville*, 2012 IL 113148, ¶ 31, 976 N.E.2d 318. When ruling on such a motion, a court accepts as true all well-pleaded facts and reasonable inferences derived from those facts. *Id.* All pleadings and supporting documents are construed in the light most favorable to the nonmoving party. *Id.*

¶ 28        "To state a legally cognizable claim for defamation, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Perfect Choice Exteriors, LLC v. Better Business Bureau of Central Illinois, Inc.*, 2018 IL App (3d) 150864, ¶ 22, 99 N.E.3d 541.

¶ 29        "Moreover, even if a statement is defamatory *per se* and not subject to an innocent construction, the statement may enjoy constitutional protection under the first amendment if it is the expression of an opinion that does not state or imply an assertion of fact which is provably false." *Id.* ¶ 23. "In other words, a statement is constitutionally protected if [it] does not contain an assertion that is 'sufficiently factual to be susceptible to being proven true or false.' " *Id.* (quoting *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 100, 672 N.E.2d 1207, 1220 (1996)).

¶ 30        "In applying this test, [courts] are guided by several criteria: (1) whether the statement has a precise and readily understood meaning, (2) whether the statement is verifiable, and (3) whether the statement's literary or social context signals that it has factual content." *Id.* ¶ 26.

¶ 31                                      B. This Case

¶ 32        The portion of the email at issue reads, "It is my opinion that his pursuit for financial

gain at the expense of friends and neighbors makes him, as well as anyone he represents, person[s] with whom we choose not to interact or be exposed to." When analyzing the statement through the lens of the criteria articulated in *Perfect Choice Exteriors*, it is clear that the statement is an opinion.

¶ 33    Regarding the first factor, nothing about Pate's email was precise. Although a reader of the email with full knowledge of the dispute between Pate and Hutson would likely know to what Pate was referring, this context-free email submitted to a general comment email address at a company that Hutson did not even work for would be meaningless to the typical reader.

¶ 34    Regarding the second factor, the statement is too vague to be verifiable. What does it mean to pursue "financial gain at the expense of friends and neighbors?" A company dumping chemicals into a local water supply may seek financial gain at the expense of friends and neighbors, but, in the most literal sense, so does the mom-and-pop shop that sells refreshments to folks in the neighborhood. Because "pursuit of financial gain at the expense of friends and neighbors" could mean nearly any kind of local business activity, we conclude that it is not "sufficiently factual to be susceptible to being proven true or false." *Bryson*, 174 Ill. 2d at 100.

¶ 35    Regarding the third factor, the statement's context signals that it does not have factual content. Pate sent the email to a general comment email address at Berkshire Hathaway. He was very vague and essentially expressed his opinion about Hutson to justify discontinuing any mailing, advertisement, or business from Berkshire Hathaway.

¶ 36    In other words, Pate's email was an "evaluative judgment, not a verifiable factual statement." (Emphasis omitted.) *Perfect Choice Exteriors*, 2018 IL App (3d) 150864, ¶ 27. "A general opinion that someone's job performance is 'unsatisfactory' is not actionable absent some express or clearly implied reference to particular facts that purportedly support the opinion, such

as performance reviews or other 'specific factual criteria' used to measure the claimant's job performance." *Id.* ¶ 29. The mere fact that the email appeared to cast Hutson's job performance in a bad light does not make the statement actionable. Additionally, the mere fact that Pate's opinion of Hutson may have relied on other verifiable data does not make the statement actionable because that data was not included in the statement. *Id.*

¶ 37          In *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 397, 882 N.E.2d 1011, 1022 (2008), the Illinois Supreme Court explained that "the first amendment prohibits defamation actions based on loose, figurative language that no reasonable person would believe presented facts." The Illinois Supreme Court then cited numerous examples of defamation claims failing for this reason, and because of their illustrative quality, we quote that citation in its entirety:

> "See, *e.g.*, *Troy Group, Inc. v. Tilson*, 364 F. Supp. 2d 1149, 1157 (C.D. Cal. 2005) (parties associated with corporation could not sue shareholder for defamation based on his criticism of them 'as the biggest crooks on the planet' because, when viewed in context, it was the type of exaggerated, figurative and hyperbolic speech that the first amendment protects); *Levinsky's, Inc. v. Wal-Mart Stores, Inc.*, 127 F.3d 122, 128 (1st Cir. 1997) (because of the first amendment, Wal-Mart's reference to business competitor as 'trashy,' while unflattering and uncomplimentary, cannot serve as the basis for defamation claim); *Old Dominion Branch No. 496 v. Austin*, 418 U.S. 264, 284-86 *** (1974) (use of the word 'traitor' to define a worker who crossed a picket line not actionable); *Greenbelt Cooperative Publishing Ass'n v. Bresler*, 398 U.S. 6, 13-14 *** (1970) (newspaper's characterization of a developer's negotiating position as 'blackmail' not defamatory as a matter of

federal constitutional law—the word was simply an epithet and, under the circumstances, did not suggest commission of a crime); *Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir.1992) (calling play 'a rip-off, a fraud, a scandal, a snake-oil job' was mere hyperbole and, thus, constitutionally protected)." *Id.* at 397-98.

¶ 38       We conclude that this case is very similar to the situations discussed in the above Illinois Supreme Court's list of cases. Pate's email was critical and perhaps hyperbolic, but his words "are merely subjective characterizations lacking precise and readily understood meaning." *Id.* at 401. In the context of submitting a complaint to Berkshire Hathaway via email, "no reasonable person would regard [his words] as anything other than colorful hyperbole aimed at capturing the reader's interest and attention." *Id.*

¶ 39                                    III. CONCLUSION

¶ 40       For the reasons stated, we affirm the trial court's judgment.

¶ 41       Affirmed.