2024 IL App (1st) 230659-U

No. 1-23-0659

Order filed October 17, 2024

Fourth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

|  |  |
|---|---|
| CHARTER FITNESS HOLDING I, LLC, CHARTER FITNESS HOLDING II, LLC, CHARTER FITNESS HOLDING III, LLC, | ) ) ) ) |
| | ) |
| Plaintiffs-Appellants, | ) ) |
| v. | ) ) ) |
| SOUTH BRANCH CAPITAL PARTNERS, LLC, GLENN GOTTFRIED, MICHAEL O'MEARA, and CFIT HOLDING CORPORATION, | ) ) ) ) ) |
| Defendants-Appellees. | |

Appeal from the
Circuit Court of
Cook County.

No. 2022 L 004137

Honorable
Catherine A. Schneider,
Judge Presiding

_____

JUSTICE LYLE delivered the judgment of the court.
Presiding Justice Rochford and Justice Ocasio concurred in the judgment.

**ORDER**

¶ 1   *Held*:  We affirm the circuit court's order to dismiss plaintiff's complaint where plaintiff failed to state a cause of action.

¶ 2   Plaintiffs-Appellants, Charter Fitness Holding I, LLC (Charter I), Charter Fitness Holding

II, LLC (Charter II), and Charter Fitness Holding III, LLC (Charter III) (collectively Charter

Fitness, LLCs) filed a complaint against Defendants-Appellants, South Branch Capital Partners, LLC (South Branch), Glenn Gottfried, Michael O'Meara, and CFIT Holding Corporation (CFIT). Plaintiffs alleged breach of fiduciary duty against South Branch, Mr. Gottfried, and Mr. O'Meara and breach of contract against South Branch and CFIT. The circuit court dismissed Plaintiffs complaint with prejudice. Plaintiffs now appeal the court's order. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiffs operated a number of fitness clubs known as "Charter Fitness." The fitness clubs were owned by each of Plaintiffs' manager-managed limited liability companies. Plaintiffs were governed by their operating agreements (Operating Agreements) dated July 31, 2010, which named NEV Management LLC (NEV) as the sole manager. Peter Vrdolyak was the sole member of NEV.

¶ 5     The Operating Agreements stated: "[t]he business and affairs of the Company shall be vested in one Manager. The Manager shall direct, manage and control the business of the Company." They also stated that the sole manager may "employ accountants, legal counsel, managing agents or other professional advisors to perform services for the Company or any Subsidiary" and "enter into any and all agreements on behalf of the Company or any Subsidiary, in such forms as the Manager may approve."

¶ 6     South Branch was an Illinois limited liability company, providing services to businesses to help them improve operations and growth. Mr. O'Meara and Mr. Gottfried were the managers of South Branch, serving as President and Secretary of the corporation, respectively.

¶ 7 On November 2, 2017, Plaintiffs and South Branch entered into a written agreement (2017 Agreement) to improve Plaintiffs' growth and operations. The agreement outlined a general three-phase framework. Plaintiffs assigned South Branch executives, Mr. Gottfried and Mr. O'Meara, to the positions of interim Chief Executive Officer and Strategic Advisor, respectively, to help "manage [Plaintiffs] and work with the existing Charter management team to execute the proposed phases." The 2017 Agreement did not change Plaintiffs' operating agreements, or NEV's status as Plaintiffs' sole manager. The 2017 Agreement stated that the parties agreed to "augment [Plaintiffs'] current management team", not supplant or remove the existing management team. In fact, Mr. Gottfried and Mr. O'Meara were empowered to help manage Plaintiffs and work with the existing Charter management team to execute the proposed phases.

¶ 8 At the time of the 2017 Agreement, Plaintiffs had open lines of credit and loans with its senior secured creditor, Byline. Plaintiffs, NEV, and Mr. Vrdolyak, individually, were indebted to Byline as borrowers or guarantors for over nine million dollars. Under Phase 1, the parties planned to restructure Plaintiffs' debt to Byline. Additionally, the parties agreed to attempt to structure a $1.5 million capital infusion into Plaintiffs over three intervals with the first payment of $300,000 to occur within five business days of the 2017 Agreement. Funding for the second and third intervals was on a "best efforts basis" and it was "partially based on the execution of certain operating changes within [Plaintiffs] senior debt restructuring."

¶ 9 To complete the capital infusions, SBCP Charter LLC (SBCP) was organized on October 20, 2017. South Branch was SBCP's manager. On November 6, 2017, Plaintiffs and SBCP entered into a Subordinated Promissory Note and Warrant Purchase Agreement (Note Purchase Agreement). Pursuant to the Note Purchase Agreement, Plaintiffs and SBCP agreed that SBCP

would be the exclusive lender to Plaintiffs for up to $1.5 million. The terms of the disbursements under the Note Purchase Agreement paralleled the terms Plaintiffs and South Branch set for the three intervals under the 2017 Agreement. CFIT was then incorporated on November 28, 2017, to become the holding company for the assets of Charter Fitness, LLCs. Mr. O'Meara served as President and Mr. Gottfried served as secretary of the corporation.

¶ 10    Pursuant to Phase 1 of the 2017 Agreement, the parties completed the first capital infusion of $300,000 to Plaintiffs through SBCP. Defendants attempted to restructure Plaintiffs' debt, but Byline refused. On March 27, 2018, Byline sent Plaintiffs a notice of default for their loans, or lines of credit, of over $9 million. On March 28, 2018, SBCP sent Plaintiffs a notice of default for the $300,000 owed.

¶ 11    Charter Fitness, LLCs, South Branch, and CFIT then entered into various agreements toward a public UCC sale of Plaintiffs' assets. On May 7, 2018, CFIT entered into an Option to Purchase Assets Agreement (Option Agreement) providing that so long as: (a) CFIT purchased Plaintiffs' assets at the May 2018 UCC public auction and (b) Mr. Vrdolyak, NEV, and other related/affiliated persons and entities received unconditional and blanket releases for loan defaults in excess of nine million dollars, then (c) CFIT would receive Charter Fitness, LLC's intellectual property including, but not limited to, trademarks copy rights and website content. Plaintiffs, CFIT, and South Branch signed an Asset Purchase Agreement (Asset Agreement), which transferred Charter Fitness, LLC's intellectual property. Both agreements contained an integration clause with the following language: "This Agreement and the documents delivered pursuant hereto, contain the entire understanding of the parties hereto with regard to the subject matter contained herein or therein, and supersede all prior agreements or understandings."

¶ 12    On May 8, 2018, Byline, Plaintiffs, NEV (individually), Mr. Vrdolyak (individually), and other related parties entered into a Peaceful Tender and Release Agreement (Peaceful Tender Agreement). Pursuant to the agreement, the parties consented to Byline disposing of all of Plaintiffs' physical assets through a public UCC auction. In exchange, Byline agreed to release Plaintiffs, NEV and Mr. Vrdolyak from their defaulted debt obligations. Plaintiffs' assets were sold at the UCC public auction on that date. CFIT purchased the assets at the public auction and acquired Plaintiffs' other assets pursuant to the Asset Agreement and the Option Agreement.

¶ 13    On May 6, 2022, Plaintiffs filed a complaint against Defendants, alleging Defendants breached their fiduciary duties to Plaintiffs and that South Branch and CFIT breached the 2017 Agreement. Defendants subsequently filed a motion to dismiss pursuant to section 2-619(a) of the Code of Civil Procedure (Code) (735 ILCS 5/2-619(a)(9) (West 2002)). Regarding the first count, Defendants argued that, under the Plaintiffs' Operating Agreements, fiduciary duties to Plaintiffs were nonexistent. Defendants also argued that under section 2-615 of the Code (725 ILCS 5/2-615), they did not owe fiduciary duties to Plaintiffs and that the 2017 Agreement was superseded and rendered impossible by the Asset Agreement, Option Agreement, and Peaceful Tender Agreement (2018 Agreements).

¶ 14    The circuit court granted Defendants' motion to dismiss. Regarding the first count, the court found the fiduciary duties allegedly owed to Plaintiffs were nonexistent because Plaintiffs were manager-managed LLCs and NEV was their manager. The court also ruled that there was no set of facts where Plaintiffs could plead a cause of action for breach of fiduciary duty because no such duty existed between the parties. For the second count, the court found that CFIT did not breach the 2017 Agreement because it did not exist at the time the agreement was formed.

Additionally, the court found the 2018 Agreements superseded the 2017 Agreement. Thus, the court dismissed Plaintiffs' complaint. Plaintiffs now appeal the court's dismissal order.

¶ 15                                II. ANALYSIS

¶ 16    We find that we have jurisdiction to consider the merits of this appeal pursuant to Illinois Supreme Court Rules 301 (eff. Feb. 1, 1994) and 303(a) (eff. July 1, 2017). Plaintiffs timely filed their notice of appeal challenging the trial court's dismissal of Count I pursuant to Section 2-615 and Counts I and II pursuant to Section 2-619.

¶ 17    A section 2-615 motion tests the legal sufficiency of the complaint. *Solaia Technology, LLC v. Specialty Public Co.*, 221 Ill. 2d 558, 579 (2006). A trial court may consider only the allegations in the pleadings when ruling on a section 2-615 motion. *Winters v. Wangler*, 386 Ill. App. 3d 788, 793 (2008). On review, the question is whether the allegations of the complaint, when construed in the light most favorable to the Plaintiffs, are sufficient to establish a cause of action upon which relief may be granted. *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009).

¶ 18    A section 2-619 motion admits the legal sufficiency of the plaintiff's claim but asserts an affirmative matter outside of the pleading that defeats the claim. *Masters v. Murphy*, 2020 IL App (1st) 190908 ¶ 9. Section 2-619.1 of the Code allows a party to combine a section 2-619 motion to dismiss, based upon certain defects or defenses, with a section 2-615 motion to dismiss based on the plaintiff's substantially insufficient pleadings. 735 ILCS 5/2-619.1 (West 2022). Our standard of review is de novo. *Id.*

¶ 19    Plaintiffs' complaint is based upon two central arguments. First, Plaintiffs contend that a fiduciary duty was owed by South Branch, Mr. Gottfried, and Mr. O'Meara. They submit that South Branch agreed to provide Plaintiff with "the necessary management and capital to revitalize

the growth and expand the cash flow and value of the businesses" in the agreed upon three-part plan. They argue that Mr. Gottfried was made CEO and Mr. O'Meara a Strategic Advisor, which enabled them to act as agents of South Branch in furtherance of those goals. They assert that the 2017 Agreement empowered NEV with the authority to delegate control over Charter Fitness, LLCs to Mr. Gottfried and O'Meara which it did, as evidenced by the titles they held. They argue that the Agreement entrusted South Branch, Gottfried and Meara with the responsibility of managing Plaintiff LLCs, placing them in 'total control' of Plaintiff LLCs, thereby creating a duty to act with the utmost honesty, loyalty and good faith in dealing with and on behalf of the Plaintiff LLCs. This created the fiduciary duty upon which Plaintiff LLCs base Count I of their complaint.

¶ 20    Limited liability companies are statutorily created entities governed by the Illinois Limited Liability Company Act (Act) (805 ILCS 180/1-1, *et seq.* (West 2018)). *800 S. Wells Commercial LLC v. Cadden*, 2018 IL App 162882, ¶ 31. When determining whether fiduciary duties are owed to limited liability companies, we must first look to the Act. *Id.* When a statute dictates our discussion, it is well established that it is our duty to ascertain and give effect to the intent of the legislature via that statute's language, which is the best indicator of legislative intent. *Id.*

¶ 21    The Act differentiates between member-managed and manager-managed limited liability companies. 805 ILCS 180/15-1 (West 2014). In a manager-managed company, as in the instant case, the manager alone is responsible for the management and conduct of the company's business, and "exclusively" decides any matter relating to the company. *Id.* §15-1(c). Therefore, fiduciary duties belong solely to the manager of Plaintiffs. *See Cadden*, 2018 IL App 162882, ¶ 32. Further, companies do not owe fiduciary duties under Illinois law. *Small v. Sussman*, 306 Ill. App. 3d 639, 645 (1999).

¶ 22    Here, Plaintiffs concede that NEV was the sole manager of Charter Fitness, LLCs. They also agree that pursuant to the Act, as manager, NEV was solely responsible for the management of Plaintiffs LLCs. See 805 ILCS 180/15-5(a) (West 2022). Despite these concessions, Plaintiffs allege that Defendants took control of the management and operations of Charter Fitness, LLCs pursuant to the 2017 Agreement; refused to allow Mr. Vrdolyak to meet or have conversations with Byline regarding Plaintiffs' Byline debt; and "tied the Plaintiff LLCs' hands" through the Note Purchase Agreement, which provided that only SBCP could secure their future funding.

¶ 23    Plaintiffs submit, however, that the trial court's reliance on the Act was misplaced. They argue that the 2017 Agreement modified the relations among managers, and the Operating Agreements empowered NEV to delegate to South Branch complete control of Plaintiff LLCs which they did. Those responsibilities gave South Branch the sole authority to act on Plaintiff LLCs future funding needs, gaining superiority and influence over Plaintiffs. Plaintiffs point to section 15-5(a) of the Act, which states: "To the extent the operating agreement does not otherwise provide, this Act governs relations among the members, managers and company." 805 ILCS 180/15-5(a) (West 2022). They maintain that the delegation was not prohibited by the Act. We find Plaintiffs' analysis flawed.

¶ 24    The Operating Agreements clearly state that the manager has "full and complete authority" to manage and control the businesses. Plaintiffs correctly note that the Operating Agreements allow for the delegation of managerial duties and that NEV delegated certain duties to Defendants. However, the 2017 Agreement did not extinguish NEV's right to revoke that delegation at any time. Nor did it supplant the Act, which provides that the manager alone retains fiduciary duties to the company. See *Cadden*, 2018 IL App (1st) 162882, ¶ 38 (holding that the Act "makes clear

that the manager of a manager-managed limited liability company, not its officers nor even its members, are responsible for any fiduciary duties").

¶ 25    Furthermore, the 2017 Agreement did not modify the Operating Agreements to change the responsibilities of the manager of Charter Fitness, LLCs. That Agreement specifically defined the roles of Defendants by stating they were to "work with the existing [Charter Fitness, LLCs] management team to execute the proposed phases." In fact, nothing in the record suggests that Defendants were named managers nor even members of Charter Fitness, LLCs.

¶ 26    Finally, Plaintiffs argue that the titles of interim Chief Executive Officer and Strategic Advisor given to Mr. Gottfried and Mr. O'Meara, respectively, created fiduciary duties for Defendants. Titles alone do not create fiduciary duties. See *id.* (where defendant "could not owe any fiduciary duties to the plaintiff simply by his office as vice president"). Additionally, Plaintiffs' Count I claim against South Branch fails because companies cannot owe fiduciary duties. See *Small*, 306 Ill. App. 3d at 645.

¶ 27    The remainder of Plaintiffs' arguments rely on common law principles, which are inapplicable due to the Act. See *id.* at ¶ 31 ("When dealing with limited liability companies and the fiduciary duties owed to them, we must look—first, foremost, and primarily—to the Act."). As such, Plaintiffs' arguments are meritless.  We, therefore, agree with the trial court's determination that Plaintiffs' Complaint failed to allege a set of facts sufficient to plead a cause of action for breach of a fiduciary duty. We further agree that no facts could be plead by Plaintiffs to state a cause of action for breach of fiduciary duties against South Branch, Mr. Gottfried and Mr. O'Meara.

¶ 28   Plaintiffs' final contention is the trial court erred in dismissing their claim of breach of contract against South Branch and CFIT pursuant to section 2-619 of the Code. Plaintiffs argue that the formation of CFIT was a requirement of the 2017 Agreement, thus making it a party to the agreement.  The court ruled otherwise, finding that CFIT was not a party to the 2017 Agreement, thus it could not be in breach of the contract.

¶ 29   We agree. CFIT did not exist at the time the 2017 Agreement was executed. Pursuant to the Business Corporation Act, corporations do not exist until the articles of incorporation are filed. 805 ILCS 5/2.15 (West 2000). The 2017 Agreement was signed on November 2, 2017, and CFIT became incorporated on November 28, 2017. Further, the record does not show any ratification or adoption of the 2017 Agreement by CFIT. As such, CFIT could not breach a contract it was not a party to.

¶ 30   Plaintiffs also assert that the 2017 Agreement was not superseded by the 2018 Agreements. The trial court pointed out, however, that the 2018 Agreement contained an integration clause. That clause provided that all parties understood that the 2018 Agreements "superseded all prior agreements or understanding." Thus, this argument fails also.

¶ 31   Further, Plaintiffs fail to cite any statute or case law to support their claim of trial court error. Illinois Supreme Court Rule 341(h)(7) (eff. Feb. 6, 2013) requires appellants to support their contentions with citation to the authorities upon which they rely. Mere contentions, without argument or citation of authority, do not merit consideration on appeal. *Palm v. 2800 Lake Shore Drive Condominium Association*, 401 Ill. App. 3d 868, 881 (2010). "The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Lewis v. Heartland Food Corp.*, 20104 IL App (1st) 123303, ¶ 5 (quoting *Walters v. Rodriquez*, 2011 IL

App (1st) 103488, ¶ 5). We, therefore, find this issue is forfeited. See *id.* ("Arguments that are not supported by citations to authority fail to meet the requirements of Supreme Court Rule 341(h)(7) and are procedurally defaulted"). Accordingly, we affirm the circuit court's decision to dismiss Plaintiffs' complaint pursuant to Section 2-615 and 2-619 against all Defendants with prejudice.

¶ 32                                    CONCLUSION

¶ 33    For the reasons explained above, we affirm the judgment of the circuit court.

¶ 34    Affirmed.